JAY CEE WAREHOUSE, INC., *et al.*, Appellants, v. THE INDUSTRIAL COMMISSION *et al.*, (Fay L. Evans *et al.*, Appellees).

Second District (Industrial Commission Division)   No. 2—84—0066WC

Opinion filed November 26, 1984.

Mark A. Braun, of Braun, Lynch, Smith & Strobel, Ltd., of Chicago, for appellants.

Robert E. Harrington, of Kane, Doy & Harrington, Ltd., of Chicago, for appellees.

JUSTICE BARRY delivered the opinion of the court:

Applications for adjustment of claim were filed by the claimants, the widow and the children of Rubin Evans, under the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.1 *et seq.*), against the respondents, Jay Cee Warehouse, Inc. (Jay Cee), Shinsho American Corporation (Shinsho), and Meyers Motor Transportation Company (Meyers). The parties stipulated that Evans' death, which occurred while he was operating a forklift truck, arose out of and in the course of his employment. The arbitrator, after determining that

an employer-employee relationship existed between Evans and Jay Cee on the day of his death and that Evans was not an employee of Shinsho under section 1(a)(4) of the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.1(a)(4)), ordered that benefits be paid to the claimants by Jay Cee. The arbitrator also dismissed Shinsho and Meyers from the cause. The decision of the arbitrator was affirmed by the Industrial Commission and confirmed by the circuit court of Lake County. Jay Cee appeals. We affirm.

On appeal Jay Cee argues that the Industrial Commission's finding that Evans was not an employee of Shinsho at the time of his death under section 1(a)(4) of the Workmen's Compensation Act was contrary to law and against the manifest weight of the evidence.

We briefly review the pertinent facts in this cause. Shinsho is in the business of selling cold-rolled steel wire in the United States which has been manufactured in Japan. In December of 1974, Shinsho entered into a lease with Carl Ivanelli, Jr., of Jay Cee Warehouse, a partnership. Jay Cee Warehouse was incorporated six months later and became Jay Cee Warehouse, Inc., the appellant. The lease included an amount for rental of 100,000 square feet in a warehouse owned by Jay Cee in Chicago. It also included an amount for the wages of three workers: Ivanelli (foreman and comptroller), R. Lullo (jeep driver), and R. Evans (jeep driver). However, according to Ivanelli, the lease only covered Evans' wages. It did not include overhead, profit, social security or unemployment.

Evans had been hired by Ivanelli prior to the lease with Shinsho. After Jay Cee entered into the lease with Shinsho, Lullo and Evans only worked moving the steel owned by Shinsho at the Jay Cee warehouse. Ivanelli received instructions regarding receiving and shipping steel wire from Shinsho officials and passed along any instructions to Evans. Ivanelli testified that if Shinsho had asked him to remove Evans from handling its steel at the Jay Cee warehouse, he would have been obliged to do so.

In February of 1976, Shinsho decided to terminate its lease with Jay Cee and obtain its own warehouse because of two fires that had occurred at the Jay Cee warehouse. Shinsho obtained a warehouse in Lake Bluff, and entered into a separate oral agreement with Jay Cee to transport its steel from the Jay Cee warehouse to the new warehouse. Shinsho agreed to pay Jay Cee 26¢ per pound to cover both the labor and transportation costs associated with moving the steel. Ivanelli then hired trucks and drivers from Meyers to transport the steel to Lake Bluff and to deposit it in the new warehouse. (Ivanelli was an officer and stockholder in both Jay Cee and Meyers.) Ivanelli

received instructions from Shinsho as to loading the trucks. Shinsho asked that Evans drive a forklift at the new warehouse, and Ivanelli instructed Evans to go to the new Shinsho warehouse to unload the steel wire.

James Johnson, an assistant sales manager for Shinsho, also testified. Normally he worked at Shinsho's office in Skokie. However, after Shinsho obtained the warehouse in Lake Bluff, he spent some time working there. Shinsho had leased a forklift from Clark Equipment Company for use at the new warehouse. Johnson created a pattern for stacking the new and old steel which he later explained to Evans. On approximately March 14, 1976, Jay Cee began to move the steel to the new warehouse. Each morning Johnson would unlock the doors at the warehouse and return at night to make sure they were locked.

On March 22, 1976, he found the decedent and the forklift on its side. After Evans' death, Shinsho hired two drivers to continue unloading the trucks. The new drivers were placed on Shinsho's payroll. Evans had not been on Shinsho's payroll.

The sole issue on appeal is whether the finding of the Industrial Commission that Evans was not an employee of Shinsho, and thus that Shinsho was not a borrowing employer under the Workmen's Compensation Act, is contrary to law and against the manifest weight of the evidence.

"An employee in the general employment of one person may be loaned to another for the performance of special work and become the employee of a person to whom he is loaned, while performing the specific service." (*A.J. Johnson Paving Co. v. Industrial Com.* (1980), 82 Ill. 2d 341, 346-47, 412 N.E.2d 477, 480.) This concept, referred to as the loaned-employee doctrine, was specifically incorporated into the Illinois Workmen's Compensation Act, which provides:

> "Where an employer operating under and subject to the provisions of this Act loans an employee to another such employer and such loaned employee sustains a compensable accidental injury in the employment of such borrowing employer and where such borrowing employer does not provide or pay the benefits or payments due such injured employee, such loaning employer is liable to provide or pay all benefits or payments due such employee under this Act and as to such employee the liability of such loaning and borrowing employers is joint and several ***." Ill. Rev. Stat. 1975, ch. 48, par. 138.1(a)(4).

In determining whether an employee was loaned, a reviewing court must ask: (1) whether the borrowing employer had the right to direct and control the manner in which the claimant performed the

work; and (2) whether a contract for hire, either express or implied, existed between the claimant and the borrowing employer. (*A.J. Johnson Paving Co. v. Industrial Com.* (1980), 82 Ill. 2d 341, 348, 412 N.E.2d 477, 481.) The existence of a loaned-employee relationship is generally a question of fact to be determined by the Industrial Commission, whose finding will not be disturbed unless it is contrary to the manifest weight of the evidence. *M & M Electric Co. v. Industrial Com.* (1974), 57 Ill. 2d 113, 117, 311 N.E.2d 161, 163.

As mentioned above, the first factor is whether Shinsho had the right to direct and control Evans' work. Evans was initially hired by Jay Cee and was on Jay Cee's payroll. He was never on Shinsho's payroll. Evans received most of his instructions from Ivanelli, his foreman, though he also received some directions from Shinsho that were relayed to him through Ivanelli. Under the lease agreement, Evans worked in a portion of the Jay Cee warehouse that was leased exclusively to Shinsho. At the time of the accident, Evans was working in the Lake Bluff warehouse at Shinsho's request, the warehouse was exclusively within Shinsho's control, and Evans was operating a forklift that had been rented by Shinsho. Shinsho's manager, James Johnson, did instruct Evans where to stack the steel wire at the new warehouse. Yet, Johnson was not Evans' supervisor. Shinsho could have requested that Evans be removed from working with its products. However, Shinsho did not have the right to have Evans discharged.

The second factor is whether a contract of hire, either express or implied, existed between Evans and Shinsho. It is clear that Evans did not expressly consent to the establishment of an employer-employee relationship between himself and Shinsho. However, Evans may have impliedly consented to an employment relationship with Shinsho. He knew that he was doing work for Shinsho, first at the Jay Cee warehouse, and later at Shinsho's warehouse. He also followed Shinsho's instructions as to what work he was to do. Yet, Evans was hired by Jay Cee and was paid by Jay Cee. He received most of his instructions from Ivanelli. Also, during the period that the steel was being moved to Lake Bluff, Evans reported to work at Jay Cee's warehouse, he punched in on Jay Cee's time clock, and he was transported to and from Shinsho's warehouse in Meyers trucks.

■ It is apparent from the facts that the evidence was conflicting as to both of the above factors. We find that there is sufficient evidence to support the Commission's conclusion that Evans was not totally under the control of Shinsho or freed from the control of Jay Cee. We also find that there is sufficient evidence to support the con-

clusion that Evans believed that he was working for Jay Cee, rather than for Shinsho, at the time of his death. Therefore, we hold that the decision of the Industrial Commission was not against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

WEBBER, P.J., McNAMARA, LINDBERG, and KASSERMAN, JJ., concur.