MERVIN WOLFE, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*, (Baldwin Associates, Appellees).

Fourth District (Industrial Commission Division)   No. 4—85—0038WC

Opinion filed November 5, 1985.—Rehearing denied January 2, 1986.

Ray Moss, of Ray Moss & Associates, of Clinton, for appellant.

Richard W. Gunning, of Livingstone, Mueller, Gunning, O'Brien & Davlin, P.C., of Springfield, for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

Petitioner, Mervin Wolfe, filed an application for adjustment of claim under the Workers' Compensation Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.1 *et seq.*) for injuries he allegedly sustained to his head, neck and right knee while he was employed by respondent Baldwin Associates. In a decision entered March 25, 1983, arbitrator Ruth W. White awarded petitioner 10 weeks of partial disability benefit under section 8(d)(2) of the Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.8(d)(2)) based upon a finding that petitioner's neck injury resulted in 2% partial disability. No benefits were awarded for the injury to petitioner's knee. The arbitrator ordered respondent to pay $201 for necessary medical services under section 8(a) of the Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.8(a)). However, in the process the arbitrator denied petitioner's claim for certain other medical expenses. Disallowed were expenses incurred in treatment of petitioner's knee. Also disallowed were expenses incurred in treatment of petitioner's neck injury because such treatment was provided by a third physician from whom petitioner had sought treatment. (See Ill. Rev. Stat. 1983, ch. 48, par. 138.8(a)(3).) Wolfe petitioned the Industrial Commission for review of the decision of the arbitrator. On review, the Industrial Commission affirmed the decision of the arbitrator; and petitioner then sought review of the decision of the Industrial Commission in the circuit court of DeWitt County. Respondent moved to quash summons and dismiss the appeal on the ground that petitioner had failed to file a written request for the summons that was issued in the cause. (See Ill. Rev.

Stat. 1983, ch. 48, par. 138.19(f)(1).) That motion was denied. The circuit court subsequently confirmed the decision of the Industrial Commission. Petitioner has perfected the instant appeal to this court.

On appeal petitioner contends that the circuit court erred by not requiring the Industrial Commission to make a specific finding that petitioner's knee injury was not causally related to his accident. In the alternative, petitioner also contends that any finding that petitioner's knee injury was not causally related to his accident was contrary to the manifest weight of the evidence. Petitioner further contends that the award of 10 weeks partial disability and the denial of reimbursement for certain medical treatment were likewise contrary to the manifest weight of the evidence.

The record establishes that on March 2, 1981, while working as a pipe fitter, petitioner ran into and struck the end of a steel pipe with his head. Petitioner went to his employer's first aid station, but apparently, owing to the lateness of the hour, petitioner received no treatment that day. Petitioner did not receive any medical treatment until he returned to work the next day and again went to the first aid station. On this occasion he was treated for a bruise with a small scrape on his left forehead. Petitioner's only complaint at this time was that he had a sore neck.

Petitioner was later referred to Dr. Kolandai Velu and was examined by the doctor on March 6, 1981. Dr. Velu reported that petitioner complained of a sore forehead, a sore neck, a sore right hip and an unsteady right knee. Dr. Velu performed a physical examination and took X-ray photographs of petitioner's head and neck. The X-ray photographs revealed no visible damage to the head or neck, although Dr. Velu did diagnose a bruise-like head injury and neck strain. The doctor's physical examination disclosed no swelling or other injury to petitioner's knee, although the doctor indicated petitioner might have had some minor arthritis in the knee. The doctor prescribed an over-the-counter pain medication. Dr. Velu again examined petitioner on March 13, 1981. On this occasion the doctor reported petitioner again complained of a sore right knee. According to Dr. Velu, petitioner did not know how this soreness had come about but conjectured that when he hit his head he may have buckled and twisted the knee. Petitioner did not report having fallen on the knee. Dr. Velu testified that petitioner's condition could have been related to his accident.

Dr. Velu referred petitioner to Dr. Joseph Schrodt, an orthopedic surgeon, for further testing on petitioner's knee. Dr. Schrodt examined petitioner on March 20, 1981. The doctor reported that he found no indication of any loss of range of motion nor any effusion or swell-

ing of the knee. The doctor was of the opinion that petitioner may have suffered a knee sprain but, as petitioner had been able to continue to work, the doctor saw no reason to restrict petitioner's activities.

On March 27, 1981, petitioner was examined by his family physician, Dr. M. T. Salaymeh. Dr. Salaymeh reported that petitioner complained of pain in the neck and the right knee. Petitioner told the doctor that he may have twisted his knee when he struck his head on the pipe. Dr. Salaymeh performed both physical and X-ray examinations of petitioner's neck and knee. The physical examination disclosed some tenderness and loss of range of motion of the neck and some tenderness and slight effusion of the knee. The X-ray photographs of petitioner's neck and knee were normal. Petitioner was given an elastic brace for his knee. Dr. Salaymeh again examined petitioner on April 17, 1981, at which time petitioner complained of numbness in his right arm and stiffness of his right knee. Dr. Salaymeh theorized that petitioner may be suffering from carpal tunnel syndrome in the arm and torn cartilage in the knee. The doctor referred petitioner to Dr. M. L. Mehra, a neurologist, and to Dr. Walter P. Baisier, an orthopedic surgeon.

Dr. Mehra examined petitioner on May 6, 1981, and performed a neurological examination of petitioner's right arm. The examination disclosed the existence of post-traumatic muscle pain but no evidence of any carpal tunnel syndrome.

Dr. Baisier first examined petitioner on April 30, 1981. Dr. Baisier reported that petitioner claimed to have twisted his back and knee at the time he injured his head. However, petitioner did not claim to have fallen on the knee. Petitioner complained that his knee would give way or be stiff and cause him pain. Petitioner also complained that his neck was sore and stiff and that it was painful to turn his head. Petitioner later testified before the arbitrator that he also experienced pain whenever he would use his right arm. The doctor reported that petitioner claimed his forehead had been "split open" in the accident. Dr. Baisier performed a physical examination. His examination disclosed some fluid in the knee, the presence of which prevented petitioner from being able to squat. The doctor explained that the presence of fluid would not be painful but that petitioner did experience pain if pressure was applied to the knee. The doctor found no evidence of arthritis. Further, diagnostic tests on the knee were scheduled. Dr. Baisier found no nerve damage in petitioner's neck and diagnosed petitioner's neck condition to consist of a strain and a contusion which could take several months to completely heal, but that it

should be expected to heal completely.

Petitioner was again seen by Dr. Baisier on May 8, 1981, at which time petitioner underwent an arthrogram on his knee. Some fluid was removed and some small tears were found in the knee cartilage. Dr. Baisier recommended corrective knee surgery. The operation was performed on May 21, 1981 and as a result petitioner was hospitalized from May 20 to May 26, 1981. On subsequent visits petitioner still complained of some minor swelling. Petitioner was released to return to work by the doctor on August 3, 1981, and was told to return to the doctor if necessary. Petitioner never returned.

During questioning regarding whether petitioner's knee condition was causally related to the accident, Dr. Baisier seemed to indicate that if the knee condition were causally related to the accident petitioner would have manifested some symptoms shortly after the accident. The doctor stated, "I think what he told the nurse at that date [March 3, 1981] probably would be very important to know." Petitioner had made no mention of his knee at that time. The first recorded mention thereof was made to Dr. Velu on March 6, 1981. However, Dr. Velu's examination disclosed no swelling or other injury to petitioner's knee. The first recorded physical manifestation of any knee problem was observed by Dr. Salaymeh on March 27, 1981. In testimony before the arbitrator on January 4, 1983, petitioner stated that at the time he struck his head on the pipe he fell to the floor, landing on his right knee. Petitioner further testified that on the evening of his accident he went home and applied a heat pad to his right knee.

The arbitrator found that the injury to petitioner's neck was causally related to the accident but found that the injury to petitioner's knee was not. Accordingly, since the only time petitioner was off work was when he was hospitalized for knee surgery, the arbitrator denied petitioner's claim for temporary total disability benefits. Also denied was petitioner's claim for medical expenses related to treatment of the knee. Petitioner was awarded 10 weeks of partial disability benefits under section 8(d)(2) of the Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.8(d)(2)) based upon a finding that petitioner's neck injuries resulted in 2% partial disability. The arbitrator ordered respondent to pay $201 for necessary medical services under section 8(a) of the Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.8(a)); however, the arbitrator denied petitioner's claim for certain other medical expenses incurred in treatment of petitioner's neck injury.

Petitioner had received treatment for his neck from Dr. Harold B. Allen, a chiropractor. The arbitrator denied petitioner's claim for the

cost of this treatment because the arbitrator found that such treatment was provided by a third physician from whom petitioner had sought treatment. Under section 8(a)(3) of the Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.8(a)(3)), a claimant may be compensated for medical services provided by only the claimant's first and second choice of medical service providers. Prior to visiting Dr. Allen, petitioner had sought treatment on April 17, 1981, at the emergency room of St. Vincent's Memorial Hospital in Taylorville. Petitioner subsequently left the emergency room voluntarily after becoming dissatisfied with the treatment he was receiving and went to Dr. Salaymeh's office which had been open during this time. Petitioner had not been referred to the emergency room by any of his then current physicians. At both the emergency room and Dr. Salaymeh's office that day, petitioner's complaints consisted of numbness in his right arm and stiffness of his right knee. The arbitrator held that St. Vincent was petitioner's second choice of a medical service provider (Dr. Salaymeh was petitioner's first choice). Respondent was ordered to pay the emergency room bill of $75 but not Dr. Allen's bill which totaled $578.

The first issue we turn to is one raised by respondent. Respondent contends that this appeal should be dismissed for want of jurisdiction because of petitioner's failure to file a written request for summons pursuant to section 19(f)(1) of the Workers' Compensation Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.19(f)(1)). Respondent relies on *Daugherty v. Industrial Com.* (1983), 99 Ill. 2d 1, 457 N.E.2d 381, in support of its contention that the circuit court did not have jurisdiction to review the decision of the Industrial Commission. *Daugherty* involved a situation where the written request for summons that was filed did not contain the name of a party in interest and that as a result that party was not served with summons. There the court held that jurisdiction could have been acquired only by a timely filing of a written request for summons meeting the statutory requirement that the request contain the names of all parties in interest; and the cause was dismissed for failure to file a request conforming to those requirements. The court considered as irrelevant the fact that the omitted party was eventually served with summons.

The situation in the instant case is only slightly different. Here, although a record sheet entry reflects that a request for summons was made and the record reflects that all parties in interest were served, the record sheet entry does not indicate whether the request was in writing and the record does not contain a written request. Strict compliance with section 19(f)(1) of the Act would appear to require that the request be in writing, and *Daugherty* requires strict

compliance.

■ However, we need not decide this issue as it was not properly preserved for our review in the instant appeal because it was first raised in respondent's appellate brief. Although as a general rule an objection to jurisdiction may be interposed at any time (*In re Estate of Randell* (1973), 12 Ill. App. 3d 640, 641-42, 298 N.E.2d 735, 736), where, as here, the question of jurisdiction has been litigated in the circuit court, review of the findings can be had only by prosecution of an appeal. A decision on a question of law from which no appeal has been taken becomes the law of the case. (See *United States v. Swift & Co.* (N.D. Ill. 1960), 189 F. Supp. 885, 902.) Respondent did not prosecute a cross-appeal; therefore, the issue is waived. (*City of Chicago v. Industrial Com.* (1974), 59 Ill. 2d 284, 290, 319 N.E.2d 749, 753.) We turn now to address those issues raised by petitioner.

■ Petitioner's first contention of error is that the circuit court erred by not requiring the Industrial Commission to make a specific finding that petitioner's knee injury was not causally related to his accident. Petitioner claims that the arbitrator and the Industrial Commission failed to state in so many words that the injury to petitioner's knee was not causally connected to the accident. Petitioner urges that this failure constitutes reversible error. We do not agree.

Although nowhere in the decision of the arbitrator does the arbitrator specifically state that the injury to petitioner's knee was not causally connected to the accident, the decision clearly indicates that that was the arbitrator's finding. In that portion of the arbitrator's decision that discussed whether petitioner's present condition of ill-being was causally related to the injury, the arbitrator first acknowledged that petitioner was seeking recovery for injuries to both his neck and knee. Then the arbitrator specifically stated that the injury to petitioner's neck was causally connected to the accident. The arbitrator did not make a similar statement with regard to the alleged injury to petitioner's knee. Rather, the arbitrator summarized the evidence presented concerning the knee and concluded her summary with Dr. Baisier's testimony concerning the importance of any knee complaints petitioner could have made at the time of the accident.

Later, in the portion of her decision that discussed the amount of compensation due for temporary total disability, the arbitrator, in denying any such benefits, held that the only time lost was a result of the knee injury. The arbitrator then incorporated by reference her findings of fact from the portion of her decision that discussed causal connection.

It is therefore apparent that the arbitrator found the evidence in-

sufficient to establish that the injury to petitioner's knee was causally connected to the accident. The record discloses that she failed specifically to find the existence of a causal connection between petitioner's knee injury and his accident and then denied temporary total disability benefits in spite of the fact that petitioner had lost time due to the knee injury. While the arbitrator and the Industrial Commission are required to make findings of law and fact (*National Biscuit, Inc. v. Industrial Com.* (1984), 129 Ill. App. 3d 118, 120-21, 472 N.E.2d 91, 92-93), there is no requirement that any particular language be used.

■ As an alternative argument, petitioner next contends that the finding that petitioner's knee injury was not causally related to his accident was contrary to the manifest weight of the evidence. With such issues, it is within the province of the Industrial Commission to resolve conflicts in the evidence and to draw reasonable conclusions and inferences from that evidence; and those findings should not be set aside unless they are manifestly against the weight of the evidence. (*McLean Trucking Co. v. Industrial Com.* (1983), 96 Ill. 2d 213, 219, 449 N.E.2d 832, 835.) Although it is undisputed that petitioner did suffer a knee injury, there is evidence in the record in the form of the testimony of Dr. Baisier, which permits the inference that had the knee injury been causally related to the accident in question petitioner should have manifested symptoms or complaints sooner than he did. Furthermore, we note areas of contradiction in petitioner's various accounts of how he sustained his knee injury, a fact that was also noted by the arbitrator. In light of the evidence adduced at the hearing, we conclude that the finding of the Industrial Commission was not contrary to the manifest weight of the evidence.

■ Petitioner next contends that the award of partial disability benefits was inadequate. It is within the province of the Industrial Commission to determine the extent and permanency of a claimant's disability, and the Industrial Commission's findings should not be set aside unless they are manifestly against the weight of the evidence. (*Garrison v. Industrial Com.* (1980), 83 Ill. 2d 375, 377, 415 N.E.2d 352, 354.) Petitioner was awarded 10 weeks of partial disability benefits under section 8(d)(2) of the Act based upon the arbitrator's finding that petitioner's neck injury resulted in 2% partial disability. The evidence supports the Industrial Commission's decision. Petitioner was diagnosed as having suffered a neck sprain. Dr. Baisier testified that such sprains can take several months to completely heal, but that they generally do heal completely. Petitioner lost no time from work on account of his neck injury and although petitioner continued to complain of some pain in the area, he did not seek further treatment.

■ Petitioner's final contention is that it was contrary to the manifest weight of the evidence for the Industrial Commission to find that Dr. Harold B. Allen was the third service provider and that, as a consequence, respondent was not liable for services provided by Dr. Allen. The recovery of expenses incurred for medical care is governed by section 8(a) of the Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.8(a)), which provides, in relevant part:

"Notwithstanding the foregoing, the employer's liability to pay for such medical services selected by the employee shall be limited to:

(1) all first aid and emergency treatment; plus

(2) all medical, surgical and hospital services provided by the physician, surgeon or hospital initially chosen by the employee or by any other physician, consultant, expert, institution or other provider of services recommended by said initial service provider or any subsequent provider of medical services in the chain of referrals from said initial service provider, plus

(3) all medical, surgical and hospital services provided by any second physician, surgeon or hospital subsequently chosen by the employee or by any other physician consultant, expert, institution or other provider of services recommended by said second service provider or any subsequent provider of medical services in the chain of referrals from said second service provider. Thereafter the employer shall select and pay for all necessary medical, surgical and hospital treatment and the employee may not select a provider of medical services at the employer's expense unless the employer agrees to such selection. At any time the employee may obtain any medical treatment he desires at his own expense. This paragraph shall not affect the duty to pay for rehabilitation referred to above."

Petitioner contends the visit to the emergency room of St. Vincent's Hospital should not constitute his second choice of a medical service provider under section 8(a)(3) of the Act. Petitioner testified that he had gone to St. Vincent's because his then current physician, Dr. Salaymeh, was unavailable. Petitioner urges that the unavailability of Dr. Salaymeh presented an emergency situation and that the expenses incurred should be paid by his employer on the grounds that they represent emergency treatment under section 8(a)(1) and not petitioner's second choice of a medical service provider. The arbitrator's decision to treat petitioner's emergency room visit as his second choice resulted in petitioner not being entitled to reimbursement for his next choice of a medical service provider.

Petitioner's contention that his doctor was unavailable is belied by evidence in the record that petitioner arrived at his doctor's office within 10 minutes after leaving the emergency room of St. Vincent's Hospital and was treated by his doctor at that time. In addition, the record fails to show that petitioner made any effort to contact his doctor before going to the emergency room. Moreover, there was no *bona fide* medical emergency. Emergency room records indicate that petitioner was admitted with complaints of pain in his right shoulder and numbness in his right arm and hand. The treatment petitioner received was not within any chain of referral from Dr. Salaymeh or any other doctor.

The arbitrator was thus justified in concluding that the visit to St. Vincent's emergency room constituted petitioner's second choice of a medical service provider.

For the above reasons, the judgment of the circuit court of DeWitt County is affirmed.

Affirmed.

WEBBER, P.J., and BARRY, LINDBERG, and McNAMARA, JJ., concur.