WILLIAM BOARD, d/b/a Board's Autobody, Appellee, v. THE INDUS-
TRIAL COMMISSION *et al.* (Harvey Bennett, d/b/a Harvey's 24 Hour Tow-
ing, Appellant; Francis Osborn, Appellee).

Third District (Industrial Commission Division)   No. 3—85—0687WC

Opinion filed October 7, 1986.

Charles D. Knell, of McConnell, Kennedy, Quinn & Johnston, Chartered, of Peoria, for appellant.

Joseph R. Napoli, Arthur J. Inman, and Michael Hasselberg, of Goldsworthy & Fifield, all of Peoria, for appellees.

JUSTICE KASSERMAN delivered the opinion of the court:

Claimant, Francis Osborn, was awarded benefits under the Workmen's Compensation Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.1 *et seq.*) for facial injuries he sustained out of and in the course of his employment with Harvey Bennett, d/b/a Harvey's 24 Hour Towing. It was established that William Board, d/b/a Board's Autobody, had requested the assistance of Bennett in uprighting a tractor-trailer and Osborn sustained his injuries while assisting Board; therefore, the arbitrator found that Osborn was a loaned employee under section 1(a)(4) of the Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.1(a)(4)) and, as a consequence, Board was jointly and severally liable to Osborn for the compensation award. The Industrial Commission confirmed the arbitrator's decision.

Within 20 days of the Commission's decision, Board petitioned the circuit court of Peoria County for a writ of *certiorari* and a writ of *scire facias.* The praecipe for the writs named only Osborn and the Commission as parties in interest. Bennett did not receive notice of the proceedings, and he did not appear. The circuit court set aside that part of the Commission's decision which held that Osborn was a loaned employee, and the court held that Board was not liable for Osborn's injuries. As a result of the court's decision, Bennett became solely responsible for Osborn's injuries.

Bennett learned of the court's ruling and within three days filed a motion to vacate the court's order. He maintained that the circuit court had not acquired jurisdiction because Board had not named Bennett in the praecipe as a party in interest. The circuit court denied Bennett's motion to vacate its order, and he appealed to this court. This court vacated the order of the circuit court and remanded this cause for further proceedings. (*Board v. Industrial Com.* (1984), 129 Ill. App. 3d 56, 472 N.E.2d 105.) Upon remand the circuit court again found that Osborn was not a loaned employee and, consequently, that Board was not liable for Osborn's injuries. Bennett has appealed to this court pursuant to Supreme Court Rule 22(g) (103 Ill. 2d R. 22(g)).

Bennett raises two issues on appeal: (1) the circuit court never acquired subject matter jurisdiction because Board failed to notify Bennett of the appeal the first time it was filed in the circuit court; and

(2) alternatively, the circuit court erred in reversing the Industrial Commission's finding that Osborn was a loaned employee.

■■ Bennett sought the following relief from the circuit court's first decision finding Bennett wholly responsible for Osborn's injuries:

"WHEREFORE, the party in interest, HARVEY BEN-NETT, prays the court enter an order vacating the order of January 17, 1984, and that HARVEY BENNETT be allowed to appear and defend his interests as Respondent on Certiorari."

After the circuit court denied Bennett's motion to vacate its first decision, Bennett appealed, apparently seeking the same relief in this court that he sought in the circuit court. In accordance with the relief apparently sought by Bennett, we vacated the judgment of the circuit court and remanded in order to allow Bennett to appear and defend his interests. (*Board v. Industrial Com.* (1984), 129 Ill. App. 3d 56, 59, 472 N.E.2d 105, 106.) We therefore conclude that Bennett challenged the circuit court's jurisdiction over his person rather than the circuit court's jurisdiction over the subject matter in question.

■ Although as a general rule an objection to subject matter jurisdiction may be raised at any time, a decision as to subject matter jurisdiction from which no appeal has been taken becomes the law of the case. (*Wolfe v. Industrial Com.* (1985), 138 Ill. App. 3d 680, 685-86, 486 N.E.2d 280, 284.) In the instant case the circuit court implicitly determined that it had jurisdiction over the subject matter by entering a decision on the merits. Since Bennett did not challenge the circuit court's exercise of subject matter jurisdiction until after the issue of personal jurisdiction was fully litigated, we must conclude, under the law-of-the-case doctrine, that the circuit court had jurisdiction over the subject matter.

Because we have determined that the circuit court had jurisdiction over the instant subject matter, we now address the merits. The following facts are relevant to this determination.

On the morning of August 22, 1981, the Peoria city police department called Board to upright an overturned tractor-trailer. Due to the size of the job, Board called Bennett for assistance. Bennett called his employee, Francis Osborn, and asked him to come out and assist on the job. Both Bennett and Board brought their tow trucks to the scene of the accident.

Upon arrival it was agreed that Board and Bennett would hook their two trucks onto opposite ends of the tractor-trailer. After helping Bennett hook Bennett's tow truck onto the tractor-trailer, Osborn helped Board hook Board's tow truck onto the tractor-trailer. While assisting Board, Osborn sustained personal injuries. The nature and

extent of these injuries is not questioned.

William Board testified that Bennett had assisted him on several prior occasions and that on each prior occasion they separately billed the customer. Bennett did, however, send Board a bill for the towing performed on the occasion in question. Board testified separate billings for such services are the common practice between tow-truck companies. Board denied ever instructing Osborn to do anything prior to Osborn's injuries. Board stated that he never requested that Bennett bring anyone along to assist either him or Bennett.

Harvey Bennett testified that Osborn had been his employee for the better part of five years. In response to a call from Mrs. Bennett, Osborn met Bennett at Bennett's shop on the day in question. The two men drove to the scene of the tractor-trailer accident in Bennett's tow truck. Bennett denied ever instructing Osborn to assist Board. Bennett stated that it was his customary practice to bill the other tow-truck operator, not the direct recipient of the towing service, when he assisted. Bennett admitted that he had the sole right to fire Osborn and that he paid Osborn.

Mrs. Bennett testified that no mention was made of Osborn's assistance being required when Board called. She stated that in her position as bookkeeper it was her practice to bill the tow-truck company requesting assistance rather than the direct recipient of the towing service.

Francis Osborn, the injured employee, testified that upon arrival at the scene of the accident he went down to the stranded tractor-trailer. Both Board and Bennett then handed him the towing cables from their respective tow trucks, which Osborn hooked onto the tractor-trailer. After uprighting the tractor-trailer, Osborn went over to assist Bennett. Osborn stated that Bennett then told him to go help Board to unload some wire from the trailer. Noticing that the towing cable on Board's tow truck was stuck, Osborn asked Board for a hammer so he could loosen the cable. Board gave Osborn a hammer, which Osborn used to beat the cable binder. While Osborn was striking the cable binder, the cable loosened and the snatch block hit Osborn in the face. Osborn stated that Board never verbally instructed him to do anything. Osborn further stated that he was paid exclusively by Bennett and that Bennett had the power to fire him.

In determining whether an employee was loaned, a reviewing court must ask (1) whether the borrowing employer had the right to direct and control the manner in which the claimant performed the work, and (2) whether a contract for hire, express or implied, existed between claimant and the borrowing employer. (*Jay Cee Warehouse,*

*Inc. v. Industrial Com.* (1984), 129 Ill. App. 3d 89, 91-92, 471 N.E.2d 953, 956.) The existence of a loaned-employee relationship is generally a question of fact to be determined by the Industrial Commission, whose finding will not be disturbed unless it is contrary to the manifest weight of the evidence. 129 Ill. App. 3d 89, 92, 471 N.E.2d 953, 956.

■ Our review of the record indicates that there was no evidence that Board had any right to direct or control the manner in which Osborn performed his work. Bennett urges that the evidence indicates the existence of an implied employment contract between Osborn and Board; however, there is nothing in the record which establishes any control or direction which may be imputed to Board. Consequently, the Industrial Commission's finding that Osborn was a loaned employee is contrary to the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

WEBBER, P.J., and BARRY, LINDBERG, and McNAMARA, JJ., concur.