BENOY MOTOR SALES, INC., *et al.*, Plaintiffs-Appellants, v. UNIVERSAL UNDERWRITERS INSURANCE COMPANY, Defendant-Appellee.

First District (4th Division)   No. 1—96—0536

Opinion filed April 10, 1997.—Rehearing denied May 12, 1997.

Law Offices of Patrick A. Murphy, of Chicago (Patrick A. Murphy and Robert R. Dlugajczyk, of counsel), for appellants.

Robert J. Bates, Jr., and Kathleen H. Jensen, both of Bates, Meckler, Bulger & Tilson, of Chicago, for appellee.

John S. Vishneski III and David J. Poirier, both of Keck, Mahin & Cate, of Chicago, and Eugene R. Anderson, Michael R. Magaril, Michael S. Gurland, and Todd D. Robichaud, all of Anderson, Kill, Olick & Oshinsky, P.C., of New York, New York (Amy R. Bach, of counsel), for *amicus curiae*.

PRESIDING JUSTICE WOLFSON delivered the opinion of the court:

Our national desire to clean up polluted sites has produced a side industry that, in turn, creates a fertile ground for litigation—the resolving of coverage disputes between insured polluters and their insurance companies. This is one of those cases.

The plaintiffs are 10 automobile dealerships (Dealerships). They sought a declaratory judgment that would require Universal Underwriters Insurance Company (Universal) to defend and indemnify them against various claims brought first by the Illinois Environmental Protection Agency (IEPA), then by the United States Environmental Protection Agency (USEPA), concerning the same polluted site. The IEPA filed a lawsuit. The USEPA did not.

The trial court partially granted and partially denied the Dealerships' motion for summary judgment. That denial creates the major issues on appeal.

The trial court found the actions brought against the dealerships were separate and distinct. That meant Universal would not be responsible for any defense costs related to the USEPA administrative claim. It also led the trial court to separate consideration of "source removal" of the pollution from the soil and cleanup of the groundwater. Those decisions and other matters determined by the trial court lead us to reverse and remand this cause to the trial court for further proceedings.

The plaintiffs are 10 automobile dealerships. They are Benoy Motor Sales, Inc. (Benoy); Borg Pontiac-GMC, Inc. (Borg); Conlon-Collins Ford, Inc. (Conlon); Fraher Ford Sales (Fraher); Lynn Chevrolet-Buick, Inc. (Lynn); Norem Buick Co., Inc. (Norem); Sawicki Chevrolet-Cadillac, Inc. (Sawicki); S.P. Bradley Motor Company (S.P. Bradley); Suburban Buick Company (Suburban); and Wolf Chevrolet Sales, Inc. (Wolf). Universal Underwriters Insurance Company is the defendant.

The Dealerships were solicited for their used crank case oil. Other than Lenz Oil, the record does not state who solicited the Dealerships' oil. The Dealerships sold some of this used oil to Lenz Oil.

Sometime between 1977 and 1985, the Dealerships purchased broad coverage insurance policies from Universal. The policies were called "Unicover" policies. The policies were an amalgam of separate policy types, such as general liability, fire, crime, property, and uninsured motorist policies. The policies included one or two types of umbrella coverage protecting the business or an individual.

Universal issued to the dealerships three types of Unicover policies. One policy was used generally between 1975 and 1980 (Unicover), a second between 1980 and 1982 (Unicover II), and a third after 1982 (Unicover III).

In 1985 the IEPA filed suit in Du Page County seeking recovery for any costs incurred because of the alleged release of hazardous substances at the Lenz Oil facility. The IEPA identified the Dealerships as potentially responsible parties (PRPs) but did not name them as parties in the lawsuit. In the fall of 1987, the IEPA sent no-

tices to the Dealerships informing them that they were PRPs. This was the Dealerships' first notice of the problem.

In November 1987, Universal wrote the Dealerships. In its letters, Universal reserved its right "to deny coverage, to commence a declaratory judgment action, or to condition its defense obligation on a later judicial determination of its obligation" in this matter.

On March 24, 1988, the IEPA amended its complaint and named the Dealerships as defendants in the suit. On March 30, 1988, several of the Dealerships, while denying fault, joined a partial consent decree. The decree provided that the named Dealerships reimburse Illinois for costs expended in immediate removal activity at the Lenz Oil site.

The decree covered "Source Removal" at the site but did not cover "Groundwater Costs." The decree defined "Source Removal" as including all costs except "Groundwater Costs." "Groundwater Costs" included all costs associated with a program of groundwater remediation at the site, including costs to develop a groundwater monitoring plan, implementation of this plan, and remedial action for groundwater contamination.

On April 22, 1988, Universal filed an action for declaratory relief in Cook County. Universal asked the trial court to determine its rights in regard to its possible duties to defend and indemnify the Dealerships. Universal claimed that it owed no duties to the Dealerships in regard to any costs they incurred relating to the cleanup of the Lenz Oil site. This action was dismissed for want of prosecution on April 14, 1989. Universal did not reinstate it.

In September 1989, the USEPA and the IEPA joined with certain of the Dealerships in an administrative order. The order required a "Remedial Investigation and Feasibility Study" (RI/FS) to determine how to clean up the groundwater at the Lenz Oil site.

On June 29, 1990, the Dealerships filed a complaint for declaratory judgment. The Dealerships sought a determination that the policies they had purchased from Universal covered all costs and payments relating to the cleanup of the Lenz Oil site.

On October 5, 1995, the trial court entered a memorandum and judgment order. The trial court separated the issues concerning source removal at the Lenz Oil site from those concerning cleaning groundwater under the surface. The trial court determined that Universal had a duty to defend against and indemnify the Dealerships for matters relating to source removal, the subject of the Du Page County consent decree. The trial court found that Universal was not responsible for costs covering any period where a particular dealership did not have an active policy and apportioned the damages accordingly.

The trial court found that no suit had been filed in relationship to the groundwater phase of the cleanup and that the Dealerships had incurred no liability for those costs. The trial court held Universal had no duty to defend and no present duty to indemnify the Dealerships in regard to the groundwater cleanup, since "the plaintiffs have not yet incurred any liability for groundwater contamination."

The Dealerships appeal. There is no cross-appeal.

DECISION

Our review of the trial court's rulings on the Dealerships' motion for summary judgment is *de novo. Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204 (1992).

1. The Duty to Defend the Dealerships in the USEPA Administrative Proceeding

First, we address the trial court's determination that this case involves two separate proceedings—the IEPA lawsuit and the USEPA's administrative action.

The trial court held: "The proceeding brought by the federal government is not a continuation of the Illinois lawsuit but is a separate enforcement action." Then, applying *Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co.*, 166 Ill. 2d 520, 655 N.E.2d 842 (1995), retroactively, the trial court held that since no USEPA lawsuit was filed against the Dealerships for cleanup of the groundwater there was no duty to defend the USEPA claim or pay defense costs related to that claim.

We agree that *Lapham-Hickey's* requirement of a lawsuit to trigger the insurance company's duty to defend is to be applied retroactively. See *Fruit of the Loom, Inc. v. Travelers Indemnity Co.*, 284 Ill. App. 3d 485, 496, 672 N.E.2d 278 (1996); *Forest Preserve District v. Pacific Indemnity Co.*, 279 Ill. App. 3d 728, 734, 665 N.E.2d 305 (1996).

■ Where we part company with the trial court is in its determination that we are dealing with two separate and distinct enforcement actions. We find one continuing action. For that reason, *Lapham-Hickey* does not apply.

The three Unicover umbrella policies at issue in this case provide broad coverage for property damage "caused by an occurrence." The trial court correctly found the policies required Universal to defend and indemnify the Dealerships for certain costs relating to settlement of the IEPA's Du Page County lawsuit. That finding has not been challenged on appeal by Universal. It becomes the law of the case. See *Wolfe v. Industrial Comm'n*, 138 Ill. App. 3d 680, 686, 486

N.E.2d 280 (1985). Whether Universal had notice of the settlement before it was entered into, a fact the record does not address, does not matter.

The lawsuit that Universal had a duty to defend was directed at the polluted soil and the tainted groundwater. It made no distinction between the two. It was the same "occurrence." The consent decree covered only the soil. Groundwater cleanup issues were expressly reserved for future action. That did not extinguish Universal's duty to defend. Once triggered, that duty was continuing, and it did not go away just because Universal chose to ignore it. See *Associated Indemnity Co. v. Insurance Co. of North America*, 68 Ill. App. 3d 807, 821, 386 N.E.2d 529 (1979).

In fact, in one of the more puzzling aspects of this case, Universal filed a complaint for declaratory judgment on April 22, 1988, seeking a determination that it owed no duty to defend or indemnify because of claims arising from the pollution at the Lenz site.

Universal's complaint attached the IEPA's Du Page County complaint against the Dealerships, but makes no mention of the consent decree. The decree had been signed on March 30, 1988—22 days before Universal filed its complaint. Universal did not pursue its declaratory judgment action. It was dismissed for want of prosecution on April 14, 1989. That was the end of it. This case began when the Dealerships filed their lawsuit on June 29, 1990.

We find that Universal's breach of its duty to defend the IEPA's Du Page County lawsuit is equally applicable to the USEPA's administrative action. (We note, in passing, that the IEPA joined in the administrative order.) Universal is responsible, then, for any of the Dealerships' defense costs associated with the USEPA's claim, whether they result from surface soil cleanup or groundwater cleanup. The Dealerships should be given an opportunity to describe the legal services rendered and the amounts charged as a result of paying for the defense of both the IEPA and USEPA claims.

2. The Extent of Universal's Liability with Regard to the IEPA's Lawsuit and the Consent Decree

The trial court found that Universal is obligated to pay to each dealer only that part of the settlement amount and defense costs that relates to shipments of oil that occurred while an insurance policy was in effect. Shipments made during gaps in coverage would not be included in the recovery.

■ We do not agree. True, there were gaps in coverage. But these policies anticipated the continuing nature of pollution damage. The Unicover III policy, for instance, said: "All injury arising out of

continuous or repeated exposure to substantially the same general conditions will be considered as arising out of one occurrence."

Environmental pollution does not stop and start in discrete time periods. When pollutants are released or discharged the damage is immediate. There is a continuing process. If we were to pour black ink into white milk we could not find a time when the coloring process did not occur.

> "Under this theory, property damage is deemed to have 'occurred' continuously for a fixed period ***, and every insurer on the risk at any time during the trigger period is jointly and severally liable to the extent of their policy limits[.]" *United States Gypsum Co. v. Admiral Insurance Co.*, 268 Ill. App. 3d 598, 644, 643 N.E.2d 1226 (1994).

A continuous exposure of pollutants is the kind of occurrence envisioned by third-party liability policies. See *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 76, 578 N.E.2d 926 (1991).

We believe the analogy to *Zurich Insurance Co. v. Raymark Industries, Inc.*, 118 Ill. 2d 23, 514 N.E.2d 150 (1987), is apt. *Zurich* dealt with bodily injury incurred by people inhaling asbestos fibers. The supreme court said:

> " 'Bodily injury' takes place at or shortly after the time a claimant was exposed to asbestos and continues throughout a claimant's exposure to asbestos. Thus, an insurer that was on the risk during the time the claimant was exposed to asbestos must provide coverage." *Zurich*, 118 Ill. 2d at 47.

We remand this part of the case to the trial court for reassessment of the amount Universal is to pay each dealer as a result of the settlement with IEPA. Coverage should not be excluded for any dealer insured by Universal while the pollution process was occurring.

3. Defense and Indemnity Costs with Regard to the Administrative Order Obtained by the USEPA

■ The trial court held that as of October 5, 1995, "the plaintiffs have not yet incurred any liability for groundwater contamination," citing *Outboard Marine Corp.*, 154 Ill. 2d 90, 607 N.E.2d 1204. The Dealerships' complaint seeking a declaratory judgment regarding the duty to indemnify due to the USEPA claim was dismissed with leave to reinstate.

We conclude that the complaint should not have been dismissed. The Dealerships incurred substantial expenses for remedial and feasibility studies at the Lenz site. Those are not defense costs. Those

expenses are damages incurred as a result of the Dealerships' response to a government-ordered cleanup. The word "damages," in this environmental setting, should be given a broad reading that brings the payments within policy coverage. *Outboard Marine*, 154 Ill. 2d at 116-17.

True, in this kind of case the final extent of the Dealerships' damages may not be known until some time in the future. But the purpose of this kind of declaratory judgment action is to determine the legal rights and obligations of the parties to the contract. *Bank of Chicago-Garfield Ridge v. Park National Bank*, 237 Ill. App. 3d 1085, 1096, 606 N.E.2d 72 (1992). That can be done now.

We therefore reverse the dismissal of the indemnity action related to the USEPA claim and remand for consideration consistent with the views expressed in this opinion.

CONCLUSIONS

The trial court's order denying in part the plaintiffs' renewed motion for summary judgment is reversed and remanded for proceedings consistent with this opinion. The trial court's order dismissing with leave to reinstate that part of the plaintiffs' amended complaint for declaratory judgment regarding the duty to indemnify for the USEPA claim is reversed and remanded for proceedings consistent with this opinion.

Reversed and remanded with directions.

McNAMARA and BURKE, JJ., concur.