Fourth Division
 April 10, 1997









No. 1-96-0536

BENOY MOTOR SALES, INC., a corporation, ) APPEAL FROM THE
BORG PONTIAC-GMC, INC., a corporation, ) CIRCUIT COURT OF
CONLON-COLLINS FORD, INC., a corporation) COOK COUNTY.
FRAHER FORD SALES, a corporation, LYNN )
CHEVROLET-BUICK, INC., a corporation, )
NOREM BUICK CO., INC., a corporation, )
SAWICKI CHEVROLET-CADILLAC, INC., )
a corporation, S.P.BRADLEY MOTOR )
COMPANY, a corporation, SUBURBAN )
BUICK COMPANY, a corporation, and WOLF )
CHEVROLET SALES, INC., a corporation, )
 )
 Plaintiffs-Appellants, )
 )
 v. )
 )
UNIVERSAL UNDERWRITERS INSURANCE )
COMPANY, a corporation, ) HONORABLE
 ) DOROTHY KINNAIRD,
 Defendant-Appellee. ) JUDGE PRESIDING. 
 

 PRESIDING JUSTICE WOLFSON delivered the opinion of the 

court:

 Our national desire to clean up polluted sites has produced
a side industry that, in turn, creates a fertile ground for
litigation--the resolving of coverage disputes between insured
polluters and their insurance companies. This is one of those
cases.
 The plaintiffs are 10 automobile dealerships (Dealerships). 
They sought a declaratory judgment that would require Universal
Underwriters Insurance Company (Universal) to defend and
indemnify them against various claims brought first by the
Illinois Environmental Protection Agency (IEPA), then by the
United States Environmental Protection Agency (USEPA), concerning
the same polluted site. The IEPA filed a lawsuit. The USEPA did
not.
 The trial court partially granted and partially denied the 
Dealerships' motion for summary judgment. That denial creates the
major issues on appeal. 
 The trial court found the actions brought against the
dealerships were separate and distinct. That meant Universal
would not be responsible for any defense costs related to the
USEPA administrative claim. It also led the trial court to
separate consideration of "source removal" of the pollution from
the soil and cleanup of the groundwater. Those decisions and
other matters determined by the trial court lead us to reverse
and remand this cause to the trial court for further proceedings.
 The plaintiffs are 10 automobile dealerships. They are
Benoy Motor Sales, Inc. (Benoy); Borg Pontiac-GMC, Inc. (Borg);
Conlon-Collins Ford, Inc. (Conlon); Fraher Ford Sales (Fraher);
Lynn Chevrolet-Buick, Inc. (Lynn); Norem Buick Co., Inc. (Norem);
Sawicki Chevrolet-Cadillac, Inc. (Sawicki); S.P. Bradley Motor
Company (S.P. Bradley); Suburban Buick Company (Suburban); and
Wolf Chevrolet Sales, Inc. (Wolf). Universal Underwriters
Insurance Company is the defendant. 
 The Dealerships were solicited for their used crank case
oil. Other than Lenz Oil, the record does not state who
solicited the Dealerships' oil. The Dealerships sold some of
this used oil to Lenz Oil. 
 Sometime between 1977 and 1985, the Dealerships purchased
broad coverage insurance policies from Universal. The policies
were called "Unicover" policies. The policies were an amalgam of
separate policy types, such as general liability, fire, crime,
property, and uninsured motorist policies. The policies included
one or two types of umbrella coverage protecting the business or
an individual. 
 Universal issued to the dealerships three types of Unicover 
policies. One policy was used generally between 1975 and 1980
(Unicover), a second between 1980 and 1982 (Unicover II), and a
third after 1982 (Unicover III).
 In 1985 the IEPA filed suit in Du Page County seeking
recovery for any costs incurred because of the alleged release of
hazardous substances at the Lenz Oil facility. The IEPA
identified the Dealerships as potentially responsible parties
(PRPs) but did not name them as parties in the lawsuit. In the
fall of 1987, the IEPA sent notices to the Dealerships informing
them that they were PRPs. This was the Dealerships' first notice
of the problem.
 In November 1987, Universal wrote the Dealerships. In its
letters, Universal reserved its right "to deny coverage, to
commence a declaratory judgment action, or to condition its
defense obligation on a later judicial determination of its
obligation" in this matter.
 On March 24, 1988, the IEPA amended its complaint and named
the Dealerships as defendants in the suit. On March 30, 1988,
several of the Dealerships, while denying fault, joined a Partial
Consent Decree. The Decree provided that the named Dealerships
reimburse Illinois for costs expended in immediate removal
activity at the Lenz Oil site. 
 The Decree covered "Source Removal" at the site but did not
cover "Groundwater Costs." The Decree defined "Source Removal"
as including all costs except "Groundwater Costs." "Groundwater
Costs" included all costs associated with a program of
groundwater remediation at the site, including costs to develop a
groundwater monitoring plan, implementation of this plan, and
remedial action for groundwater contamination.
 On April 22, 1988, Universal filed an action for declaratory
relief in Cook County. Universal asked the trial court to
determine its rights in regard to its possible duties to defend
and indemnify the Dealerships. Universal claimed that it owed no
duties to the Dealerships in regard to any costs they incurred
relating to the clean up of the Lenz Oil site. This action was
dismissed for want of prosecution on April 14, 1989. Universal
did not reinstate it.
 In September 1989, the USEPA and the IEPA joined with
certain of the Dealerships in an Administrative Order. The Order
required a Remedial Investigation and Feasibility Study (RI/FS)
to determine how to clean up the groundwater at the Lenz Oil
site.
 On June 29, 1990, the Dealerships filed a complaint for
declaratory judgment. The Dealerships sought a determination
that the policies they had purchased from Universal covered all
costs and payments relating to the clean up of the Lenz Oil site.
 On October 5, 1995, the trial court entered a memorandum and
judgment order. The trial court separated the issues concerning 
source removal at the Lenz Oil site from those concerning
cleaning groundwater under the surface. The trial court
determined that Universal had a duty to defend against and
indemnify the Dealerships for matters relating to source removal,
the subject of the Du Page County consent decree. The trial
court found that Universal was not responsible for costs covering
any period where a particular Dealership did not have an active
policy and apportioned the damages accordingly.
 The trial court found that no suit had been filed in
relationship to the groundwater phase of the cleanup and that the
Dealerships had incurred no liability for those costs. The trial
court held Universal had no duty to defend and no present duty to
indemnify the Dealerships in regard to the groundwater clean up,
since "the plaintiffs have not yet incurred any liability for
groundwater contamination."
 The Dealerships appeal. There is no cross-appeal.
DECISION
 Our review of the trial court's rulings on the Dealerships'
motion for summary judgment is de novo. Outboard Marine v.
Liberty Mutual Insurance Co., 154 Ill. 2d 90, 102, 607 N.E.2d
1204 (1992).
 1. The duty to defend the Dealerships in the USEPA
administrative proceeding.
 First, we address the trial court's determination that this
case involves two separate proceedings--the IEPA lawsuit and the
USEPA's administrative action. 
 The trial court held: "The proceeding brought by the federal 
government is not a continuation of the Illinois lawsuit but is a
separate enforcement action." Then, applying Lapham-Hickey Steel
Corporation v. Protection Mutual Insurance Co., 166 Ill. 2d 520,
655 N.E.2d 842 (1995) retroactively, the trial court held that
since no USEPA lawsuit was filed against the Dealerships for
cleanup of the groundwater there was no duty to defend the USEPA
claim or pay defense costs related to that claim.
 We agree that Lapham-Hickey's requirement of a lawsuit to
trigger the insurance company's duty to defend is to be applied
retroactively. See Fruit of the Loom, Inc. v. Travelers
Indemnity Co., 284 Ill. App. 3d 485, 496, 672 N.E.2d 278 (1996);
Forest Preserve District of Du Page County v. Pacific Indemnity
Co., 279 Ill. App. 3d 728, 734, 665 N.E.2d 305 (1996).
 Where we part company with the trial court is in its
determination that we are dealing with two separate and distinct
enforcement actions. We find one continuing action.
For that reason, Lapham-Hickey does not apply.
 The three Unicover umbrella policies at issue in this case
provide broad coverage for property damage "caused by an
occurrence." The trial court correctly found the policies
required Universal to defend and indemnify the Dealerships for
certain costs relating to settlement of the IEPA's Du Page County
lawsuit. That finding has not been challenged on appeal by
Universal. It becomes the law of the case. See Wolfe v.
Industrial Comm'n, 138 Ill. App. 3d 680, 686, 486 N.E.2d 280
(1985). Whether Universal had notice of the settlement before it
was entered into, a fact the record does not address, does not
matter.
 The lawsuit that Universal had a duty to defend was directed
at the polluted soil and the tainted groundwater. It made no
distinction between the two. It was the same "occurrence." The
consent decree covered only the soil. Groundwater cleanup issues
were expressly reserved for future action. That did not
extinguish Universal's duty to defend. Once triggered, that duty
was continuing, and it did not go away just because Universal
chose to ignore it. See Associated Indemnity v. Insurance
Company of North America, 68 Ill. App. 3d 807, 821, 386 N.E.2d
529 (1979).
 In fact, in one of the more puzzling aspects of this case, 
Universal filed a complaint for declaratory judgment on April 22,
1988, seeking a determination that it owed no duty to defend or
indemnify because of claims arising from the pollution at the
Lenz site. 
 Universal's complaint attached the IEPA's Du Page County
complaint against the Dealerships, but makes no mention of the
consent decree. The decree had been signed on March 30, 1988--22
days before Universal filed its complaint. Universal did not
pursue its declaratory judgment action. It was dismissed for
want of prosecution on April 14, 1989. That was the end of it.
This case began when the Dealerships filed their lawsuit on June
29, 1990.
 We find that Universal's breach of its duty to defend the
IEPA's Du Page County lawsuit is equally applicable to the
USEPA's administrative action. (We note, in passing, that the
IEPA joined in the administrative order.) Universal is
responsible, then, for any of the Dealerships' defense costs
associated with the USEPA's claim, whether they result from
surface soil cleanup or groundwater cleanup. The Dealerships
should be given an opportunity to describe the legal services
rendered and the amounts charged as a result of paying for the
defense of both the IEPA and USEPA claims.
 2. The extent of Universal's liability with regard to the
IEPA's lawsuit and the consent decree.
 The trial court found that Universal is obligated to pay to
each dealer only that part of the settlement amount and defense
costs which relate to shipments of oil that occurred while an
insurance policy was in effect. Shipments made during gaps in
coverage would not be included in the recovery.
 We do not agree. True, there were gaps in coverage. But
these policies anticipated the continuing nature of pollution
damage. The Unicover III policy, for instance, said: "All injury
arising out of continuous or repeated exposure to substantially
the same general conditions will be considered as arising out of 
one occurrence."
 Environmental pollution does not stop and start in discrete
time periods. When pollutants are released or discharged the
damage is immediate. There is a continuing process. If we were
to pour black ink into white milk we could not find a time
when the coloring process did not occur.
 "Under this theory, property damage is deemed to
 have 'occurred' continuously for a fixed period,
 and every insurer on the risk at any time during
 the trigger period is jointly and severally liable
 to the extent of their policy limits[.]"
 U.S. Gypsum Co. v. Admiral Insurance Co., 268 Ill.
 App. 3d 598, 644, 643 N.E.2d 1226 (1994).
 A continuous exposure of pollutants is the kind of occurrence
envisioned by third-party liability policies. See United States
Fidelity & Guaranty Co. v. Wilkin Insulation Co., 144 Ill. 2d 64, 
76, 578 N.E.2d 926 (1991).
 We believe the analogy to Zurich Insurance Co. v. Raymark
Industry, Inc., 118 Ill. 2d 23, 514 N.E.2d 150 (1987), is apt.
Zurich dealt with bodily injury incurred by people inhaling
asbestos fibers. The Supreme Court said:
 "'Bodily injury' takes place at or shortly after
 the time a claimant was exposed to asbestos and
 continues throughout a claimant's exposure to
 asbestos. Thus, an insurer that was on the risk
 during the time the claimant was exposed to asbestos
 must provide coverage." Zurich, 118 Ill. 2d at 47.
 We remand this part of the case to the trial court for
reassessment of the amount Universal is to pay each dealer
as a result of the settlement with IEPA. Coverage should not be
excluded for any dealer insured by Universal while the pollution
process was occurring.
 3. Defense and Indemnity costs with regard to the
administrative order obtained by the USEPA.
 The trial court held that as of October 5, 1995, "the
plaintiffs have not yet incurred any liability for groundwater
contamination," citing Outboard Marine Corporation, 154 Ill. 2d
90. The Dealerships' complaint seeking a declaratory judgment
regarding the duty to indemnify due to the USEPA claim was
dismissed with leave to reinstate.
 We conclude that the complaint should not have been dismissed.
The Dealerships incurred substantial expenses for remedial and 
feasibility studies at the Lenz site. Those are not defense 
costs. Those expenses are damages incurred as a result of a the
Dealerships' response to a government-ordered cleanup. The word
"damages," in this environmental setting, should be given a broad
reading that brings the payments within policy coverage.
Outboard Marine, 154 Ill. 2d at 116-17.
 True, in this kind of case the final extent of the
Dealerships' damages may not be known until some time in the
future. But the purpose of this kind of declaratory judgment
action is to determine the legal rights and obligations of the
parties to the contract. Bank of Chicago-Garfield Ridge v. Park
National Bank, 237 Ill. App. 3d 1085, 1096, 606 N.E.2d 72 (1992). 
That can be done now.
 We therefore reverse the dismissal of the indemnity action
related to the USEPA claim and remand for consideration
consistent with the views expressed in this opinion.
CONCLUSIONS
 The trial court's order denying in part the Plaintiffs'
renewed motion for summary judgment is reversed and remanded for
proceedings consistent with this opinion. The trial court's
order dismissing with leave to reinstate that part of the
Plaintiffs' amended complaint for declaratory judgment regarding
the duty to indemnify for the USEPA claim is reversed and 

remanded for proceedings consistent with this opinion.
 REVERSED AND REMANDED WITH DIRECTIONS.
 McNAMARA and BURKE, JJ., concur.