(No. 52645.—

A. J. JOHNSON PAVING COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (R. H. DeMarr Asphalt Sales *et al.,* Appellees).

*Opinion filed September 29, 1980.—Rehearing
denied November 26, 1980.*

Jonathan Kurasch, of Discipio, Martay & Caruso, of Chicago, for appellant.

Braun, Lynch, Smith & Strobel, of Chicago (John A. Strobel, of counsel), for appellees.

MR. JUSTICE RYAN delivered the opinion of the court:

This appeal involves the loaned- or borrowed-employee issue under the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.1 *et seq.*). Claimant, Ray Wolfgram, filed an application for adjustment of claim against R. H. DeMarr Asphalt Sales. The application was subsequently amended to reflect the inclusion of an additional respondent, A. J. Johnson Paving Company (hereafter

Johnson). DeMarr also filed a cross-petition naming Johnson and/or claimant as respondents. Claimant was removed as respondent in the cross-petition upon DeMarr's motion at the arbitration proceeding. After consideration of the facts surrounding both amended applications, the arbitrator entered an award for temporary total disability, 25% permanent loss of use of the left arm, 15% loss of use of the right arm, and for necessary medical expenses. The award was entered against Johnson, based on the arbitrator's finding that Johnson was claimant's borrowing employer. No additional evidence was presented on review, and the arbitrator's decision was affirmed in full by the Industrial Commission. Subsequent to Johnson's refusal to pay the award, DeMarr, as the loaning employer and pursuant to section 1(a)(4) of the Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.1(a)(4)), paid the benefits awarded claimant. The decision of the Commission was thereafter confirmed by the Cook County circuit court. Johnson appeals directly to this court under our Rule 302(a). (73 Ill. 2d R. 302(a).) The primary issue presented by this appeal concerns the finding that there existed an employer-employee relationship between claimant and Johnson at the time of the injury.

The facts pertinent to this appeal are basically undisputed. At the time of the arbitration hearing, claimant had worked as a heavy equipment operator for 18 years. He had been employed by R. H. DeMarr Asphalt Sales for 6 years prior to the date of the accident; that is, he was paid by DeMarr; Federal and State withholding taxes and social security payments were withheld from his checks by DeMarr; DeMarr kept track of the number of hours claimant worked; DeMarr determined when and where claimant worked; claimant's right to take a vacation or time off from work was subject to DeMarr's approval; in the event of illness, claimant would call DeMarr; DeMarr had the authority to lay off or discharge claimant; and a portion of

claimant's group health insurance provided through a union was subsidized by DeMarr. Robert H. DeMarr was the owner and president of R. H. DeMarr Asphalt Sales. He owned four asphalt paving machines, one for each of the operators employed by his asphalt sales company. In the event that an order for asphalt exceeded a certain tonnage, Mr. DeMarr would provide the purchaser, free of additional charge, with an asphalt paving machine and an operator for the laying of the asphalt.

On August 21, 1974, Mr. DeMarr received a telephone call from a representative of Johnson, a paving company. He and Johnson had entered into numerous business agreements in the past. In fact, Robert DeMarr stored his equipment, when not in use, in space rented from Johnson. Thus, during the winter months, DeMarr's employees worked on the equipment while on Johnson's premises. In the course of the August 21, 1974, phone call, Mr. DeMarr was requested to provide a certain amount of asphalt and a paving machine for a particular job site, a savings and loan association's parking lot located at Harlem and Foster Avenues in Chicago. Since the amount of asphalt requested exceeded a certain tonnage, Mr. DeMarr agreed to supply the paving machine and lay the asphalt without additional charge. He reached claimant at his residence by telephone and directed claimant to report to the Johnson job site the following morning. He also told claimant what equipment would be on the site and the quantity of asphalt to be laid.

On August 22, 1974, claimant, as directed, went to the location. The DeMarr paving machine was transported to the job site by a truck which was owned by Johnson; DeMarr was not charged for this service. No DeMarr employees, other than claimant, were present at the job site, and claimant reported to the job foreman, Roger Hardt, a Johnson employee. Claimant asked Hardt where he should start laying the asphalt, and the foreman

directed claimant to an area under an overhang in the savings and loan association parking lot. The foreman advised claimant as to the desirable thickness of the asphalt to be laid; thereafter, claimant received no further instructions from the Johnson foreman. Claimant, in full control of the operation of the paving machine, was assisted by laborers who were employed by Johnson. One of the Johnson employees was assigned to operate the thickness-control screws located on the rear portion of the paving machine. Claimant did not have the authority to direct the Johnson employees as to their job performance. Hardt, however, was empowered to determine the work hours and breaks to be taken by the employees. Claimant customarily took his breaks with the Johnson employees since he needed aid in operating the thickness control on the paving machine. Claimant also reported to work and was dismissed for the day when directed by the job foreman. While Hardt did not have control over the actual operation or maintenance of the equipment, he was empowered to direct claimant to start or stop the paving machine. In the event that Hardt was not satisfied with the laying of a portion of the asphalt, he could order the operator to relay the asphalt.

As stated above, claimant reported to the Johnson job site at approximately 7 a.m. on August 22, 1974. He sustained injuries shortly after commencing the paving operation. The parties do not dispute the nature or extent of the disability award. However, Johnson contests the finding that it was claimant's borrowing employer, and therefore liable under the Act. Johnson also asserts that the arbitrator erred in refusing to consider evidence of an agreement between Johnson and DeMarr providing that DeMarr would pay workmen's compensation benefits in the event of a compensable injury.

An employee in the general employment of one person may be loaned to another for the performance of special

work and become the employee of the person to whom he is loaned while performing the special service. (See *Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379.) Whether such a transfer of employment occurs depends on whether the special or borrowing employer has the right to control the employee with respect to the work performed. (See 56 C.J.S. *Master and Servant* sec. 2(d)(2) (1948).) As stated in *Saldana*, "The main criterion for determining when a worker becomes a loaned employee is whether the special employer has control of the employee's services." 74 Ill. 2d 379, 389.

We have long recognized the borrowed-employee doctrine as being applicable to cases arising under the Workmen's Compensation Act. (*American Stevedores Co. v. Industrial Com.* (1951), 408 Ill. 449, 453-54; *Fransen Construction Co. v. Industrial Com.* (1943), 384 Ill. 616, 624-25; *Forest Preserve District v. Industrial Com.* (1934), 357 Ill. 389, 394-95; *Allen-Garcia Co. v. Industrial Com.* (1929), 334 Ill. 390, 394.) (See Comment, *Workmen's Compensation—Borrowed Servant Doctrine—Liability of the General and Special Employers* (Illinois), 1951 U. Ill. L.F. 502 (1951); Note, *Survey of Illinois Law for the Year 1950-51,* 30 Chi-Kent L. Rev. 1, 7-8 (1951).) (See generally Note, *The Borrowed Employee Doctrine in Workmen's Compensation,* 21 Drake L. Rev. 176 (1971); Annot., 152 A.L.R. 816 (1944).) In so recognizing we have also deemed in compensation cases the most dominant circumstance in identifying the employer of a loaned employee to be the right to control the manner in which the work is to be done. (*Raymond Concrete Pile Co. v. Industrial Com.* (1967), 37 Ill. 2d 512, 516-17.) The loaned-employee concept was specifically incorporated into our workmen's compensation statutory scheme by the inclusion of section 1(a)(4), effective July 11, 1957. (1957 Ill. Laws 2610; Ill. Rev. Stat. 1973, ch. 48, par. 138.1(a)(4).) (See Keefe, *Changes in the Workmen's*

*Compensation and Occupational Diseases Acts,* 47 Ill. B.J. 52, 52 (1958); Ropiequet & Keefe, *Coverage of the Illinois Workmen's Compensation Act,* 1957 U. Ill. L.F. 169, 187-88 (1957).) Following the amendment, the primary factor considered in the determination of whether an employee was loaned continued to be the right to control the manner in which the work is to be done. (See, *e.g., M & M Electric Co. v. Industrial Com.* (1974), 57 Ill. 2d 113, 116-17.) Also, this court has recognized that the loaned-employee concept, as applied to cases under the Act, requires the existence of a contract of hire, either express or implied, between the employee and the special employer before such employer may be held liable for compensation. (*McHugh-Brighton v. Industrial Com.* (1969), 42 Ill. 2d 52, 56; *M & M Electric Co. v. Industrial Com.* (1974), 57 Ill. 2d 113, 119.) (See 1C A. Larson, Workmen's Compensation sec. 48.10, at 8—317 to 8—318 (1980).) The inquiry required for the determination of the existence of the loaned-employee status is, therefore, two-fold: (1) whether the special employer, Johnson, had the right to direct and control the manner in which claimant performed the work; and (2) whether there existed a contract of hire between claimant and Johnson. The existence of the loaned-servant situation is generally a question of fact to be determined by the Industrial Commission. We will not disturb the Commission's finding on the question unless contrary to the manifest weight of the evidence. *M & M Electric Co. v. Industrial Com.* (1974), 57 Ill. 2d 113, 117; *M.W.M. Trucking Co. v. Industrial Com.* (1976), 62 Ill. 2d 245, 255-56.

Johnson contends that, since the evidence is not in dispute, the question becomes one of law which the court may determine. However, if the undisputed facts upon any issue permit more than one reasonable inference to be drawn therefrom, the determination of the issue presents a question of fact. Only if the undisputed facts permit but

a single inference can the question be characterized as one of law. (*M & M Electric Co. v. Industrial Com.* (1974), 57 Ill. 2d 113, 117.) We cannot say that it is not possible to draw more than one reasonable inference from the facts of this case bearing on the existence of an employer-employee relationship between Johnson and the claimant.

After a review of the record, we conclude that the Commission's finding that there existed an employer-employee relationship was not contrary to the manifest weight of the evidence. First, there was sufficient evidence for the Commission to infer that Johnson had the right to control the manner of the work performed. Claimant worked the same hours as the Johnson laborers; he received instructions from Hardt, the Johnson foreman; no supervisors from DeMarr were present; claimant was assisted by laborers employed by Johnson; and Hardt was empowered to direct the claimant when to start, stop or repave. The fact that claimant's skill as an operator allowed him to exercise control over the paving machine and the technical details of the paving operation was insufficient to preclude a finding that Johnson had the right to control the manner of the work. (See 1C A. Larson, Workmen's Compensation sec. 48.30, at 8—387 (1980).) Nor do we deem relevant the fact that claimant received his salary from DeMarr Asphalt. The mere fact that the employee does not receive his wages from the special employer will not defeat the finding of a loaned-employee situation. (*Allen-Garcia Co. v. Industrial Com.* (1929), 334 Ill. 390, 397.) (See 1C A. Larson, Workmen's Compensation sec. 48.30, at 8—388 to 8—390 (1980).) In addition to finding control over the method of claimant's work, the Commission could properly infer that DeMarr Asphalt relinquished control over its equipment to Johnson. The paving machine was delivered to the site by a Johnson-owned truck, and claimant was the only DeMarr employee sent to the job site to operate the machine. In

*M.W.M. Trucking Co. v. Industrial Com.* (1976), 62 Ill. 2d 245, 255, the fact that control of the equipment was surrendered to the special employer was deemed to be an important factor in upholding the Commission's finding that there existed a loaned-employee relationship. Thus, the Commission could properly infer that DeMarr relinquished control over both the manner of doing work and the equipment to Johnson.

Essential to the employer-employee relationship between Johnson and the claimant is the existence of an employment contract, express or implied. In order to establish such a contract there must be at least an implied acquiescence by the employee in the relationship. (*McHugh-Brighton v. Industrial Com.* (1969), 42 Ill. 2d 52.) This acquiescence can be established by the fact that the claimant here was aware that the paving job was being performed by Johnson and by the fact that he accepted Johnson's control over the work in that he complied with the foreman's instructions with regard to starting, stopping and break times, as well as instructions as to where to start paving and other incidental directions as to the performance of the work. (1C A. Larson, Workmen's Compensation sec. 48.10, at 8–331 to 8–332 (1980).) We therefore conclude that the Commission's finding that there existed a loaning-borrowing employer relationship between DeMarr and Johnson was not contrary to the manifest weight of the evidence.

Finally, we find no merit to Johnson's argument that the arbitrator erred in excluding evidence of an agreement between the employers with respect to liability under the Act. We have previously determined that the borrowing employer is primarily liable and the loaning employer is secondarily liable by virtue of section 1(a)(4) (Ill. Rev. Stat. 1973, ch. 48, par. 138.1(a)(4)). (*Chicago's Finest Workers Co. v. Industrial Com.* (1975), 61 Ill. 2d 340, 344-45; *Albert Mojonnier, Inc. v. Industrial Com.* (1968),

41 Ill. 2d 128.) Section 1(a)(4) provides, in part:

> "[A]s to such employee the liability of such loaning and borrowing employers is joint and several, provided that such loaning employer is *in the absence of agreement to the contrary* entitled to receive from such borrowing employer full reimbursement for all sums paid or incurred pursuant to this paragraph together with reasonable attorneys' fees and expenses in any hearings before the Industrial Commission or in any action to secure such reimbursement." (Emphasis added.) (Ill. Rev. Stat. 1973, ch. 48, par. 138.1(a) (4).)

In *Albert Mojonnier, Inc. v. Industrial Com.* (1968), 41 Ill. 2d 128, this court declined to determine the effect on the employers' liability of the phrase, "in the absence of agreement to the contrary." The refusal to consider the issue was premised on the fact that there was a failure to establish the existence of such an agreement at trial. For similar reasons, we decline to interpret the phrase here.

Johnson contends that the arbitrator erred in excluding his offer of proof on the question of whether there was an "agreement to the contrary." Actually, the record shows that the arbitrator did not exclude the offer of proof. On direct examination, Johnson was questioned about an oral agreement between him and Robert DeMarr made in 1957 concerning the general provisions covering the transactions between them. This line of questioning was objected to for the reason that what happened in 1957 would not be relevant to an occurrence nearly 20 years later. The arbitrator then instructed Johnson's attorney to confine the testimony to the present. Following a further exchange between counsel, the attorney for DeMarr stated that he didn't see the relevance of this testimony to the issues in this case. The arbitrator stated "I don't either, at this moment. Sustained." Johnson's counsel then stated he was making an offer of proof that, if Johnson were permitted to answer, his testimony would

show that the oral agreement with Robert DeMarr in 1957 was to the effect that DeMarr Asphalt was to furnish asphalt at a set charge per ton, was to furnish the equipment to lay the asphalt, was to furnish an operator for the operation of the equipment and was to carry workmen's compensation insuring the operator. Without concluding the offer, or obtaining a ruling thereon, the attorney returned to his questioning of Johnson by asking if, after the oral agreement was made in 1957, it continued to the present time, and if it was in existence on August 22, 1974. Both questions were answered in the affirmative. What Johnson now contends was an offer of proof was nothing more than a lengthy leading question preparatory to the eliciting of the two affirmative answers by Johnson referred to above. With the record in this condition, it cannot be said that Johnson was not permitted to testify as to an earlier oral agreement made in 1957, which was purportedly in effect on the day of the injury. We must assume that the arbitrator and the Commission considered this evidence along with all the other evidence in reaching this determination. There was no request for a special finding on any issue. A general finding by the Commission for one party is, in effect, a favorable finding on each special matter necessary to support the general finding. (*Garbowicz v. Industrial Com.* (1940), 373 Ill. 268, 270.) We must therefore conclude that the Commission in this case found that there was no "agreement to the contrary" concerning the respondent for the payment of workmen's compensation to the loaned employee pursuant to the Act. Such a finding was within the province of the Commission, which we hold not to be against the manifest weight of the evidence.

Accordingly, the judgment of the Cook County circuit court, confirming the decision of the Industrial Commission, is affirmed.

*Judgment affirmed.*