**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 190414-U

Order filed July 21, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| JAIME QUINTANA, | ) | Appeal from the Circuit Court |
| | ) | of the Twelve Judicial Circuit, |
| Plaintiff-Appellant, | ) | Will County, Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-19-0414 |
| | ) | Circuit No. 17-L-890 |
| FERRARA CANDY COMPANY, | ) | |
| | ) | The Honorable |
| Defendant-Appellee. | ) | Raymond Rossi, |
| | ) | Judge, presiding. |

_____

JUSTICE McDADE delivered the judgment of the court.
Justice Wright concurred in the judgment.
Justice Holdridge dissented.

_____

**ORDER**

¶ 1    *Held*:   The circuit court's order granting defendant's motion to dismiss is reversed.

¶ 2    Plaintiff Jaime Quintana appeals the circuit court's order dismissing his complaint on the

basis that his common law tort claim was barred by the exclusive remedy provision of the Illinois

Workers' Compensation Act (820 ILCS 305/5(a) (West 2012)) because he was a borrowed

employee of defendant Ferrara Candy Company ("Ferrara") at the time of his injury. On appeal,

the plaintiff argues that the circuit court erred because there was a genuine issue of material fact

as to whether he was Ferrara's borrowed employee. Finding a disputed issue of material fact, we reverse and remand for further proceeding.

¶ 3                                              FACTS

¶ 4        Ferrara operated a packaging center in Bolingbrook, Illinois where bulk candy was delivered from multiple locations and packaged into ready-to-sell products that are then sent to large retailers like Walmart and 7-Eleven. The packaging center was staffed by Ferrara employees and by contract workers provided by two staffing agencies, Elite Staffing and Staffing Network.

¶ 5        Ferrara and Elite Staffing signed a temporary staffing agreement. This agreement established the duties and responsibilities of each entity. Under the agreement, Ferrara would "supervise and train assigned employees with reasonable care when they are performing services for Ferrara under Ferrara's control." Elite Staffing was required to recruit, screen, and assign "qualified employees to perform under Ferrara's supervision." In addition, the agreement specified that Elite Staffing would provide on-site coordinators who would work under the "exclusive direction and control" of Elite Staffing "to manage and help supervise [its] assigned employees." The on-site coordinators' duties included: (1) managing the assigned employees from start to finish of each shift; (2) assisting Ferrara supervisors with matters related to assigned employees; and (3) disciplining the assigned employees for failure to comply with certain policies.

¶ 6        Quintana was an Elite Staffing employee assigned to Ferrara under their temporary staffing agreement, but nothing in the record suggests that he was privy to or aware of its terms. Like all assigned employees, Quintana had been required by Ferrara to sign a benefit waiver, prepared by Ferrara, before accepting the assignment. The waiver stated:

2

> In consideration of my assignment to Ferrara by Staffing Firm, I agree that I am solely an employee of staffing firm and that I am eligible only for such benefits as Staffing Firm may offer to me as its employee. I further understand and agree that I am not eligible for or entitled to participate in or make any claim upon any benefit plan, policy or practice offered by Ferrara, its parents, affiliates, subsidiaries or successors to any of their direct employees, regardless of the length of my assignment to Ferrara by Staffing Firm and regardless of whether I am held to be a common-law employee of Ferrara for any purpose; and therefore, with full knowledge and understanding, I hereby expressly waive any claim or right that I may have, now or in the future, to such benefits, if any, and agree not to make any claim for such benefits.

¶ 7    On November 6, 2015, Quintana was assigned to work as a baler at the Ferrara Candy Company facility located in Bolingbrook, Illinois. His job duties included baling cardboard, which consisted of breaking down and compressing boxes used in packaging. Quintana was supervised by Sammie Short, the warehouse supervisor employed by Ferrara. Short trained Quintana in his duties as a baler, set his work schedule, and determined his work assignments.

¶ 8    On November 11, 2015, Quintana was injured when wooden pallets from a forklift operated by a Ferrara employee fell on him. On October 12, 2017, Quintana filed a one-count complaint against Ferrara, alleging negligent training or supervision of the forklift operator. On December 14, 2017, Ferrara filed its answer to the complaint, admitting that Quintana was an employee of Elite.

3

¶ 9     In February 2018, Ferrara sought leave to withdraw its answer and to file a motion to dismiss pursuant to 735 ILCS 5/2-619(a)(9) (West 2018), which was filed *instanter.* In the motion, Ferrara alleged Quintana's Complaint was barred under the exclusivity provisions of the Workers' Compensation Act. The company contended that Quintana, as its "borrowed employee," was precluded as a matter of law from maintaining the civil action because his claim was asserted against his "borrowing employer" other than under the act.

¶ 10    After completion of discovery, Quintana filed a response to the motion to dismiss. Relying on the waiver he had been required to sign and on evidence provided, *inter alia*, through deposition and affidavit by Ferrara's quality assurance manager, Uche Jumbo, that showed that Elite Staffing's on-site coordinators retained significant hands-on management of its assignees; Quintana alleged the existence of a material factual dispute precluding dismissal.

¶ 11    The circuit court granted the motion and dismissed the complaint with prejudice on June 27, 2019. Quintana timely appealed.

¶ 12                                    ANALYSIS

¶ 13    A motion to dismiss pursuant to section 2-619(a)(9) admits the allegations of the complaint but asserts the action is "barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2018).  The propriety of a dismissal under this section of the Code of Civil Procedure presents a question of law that we review *de novo. McIntosh v. Walgreens Boots All, Inc.,* 2019 IL 123626, ¶ 17. In making this assessment, the court determines whether there exists a genuine issue of material fact that should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law. *Id.* Ferrara asserts preclusion, as a matter of law, under the workers compensation law. 820 ILCS 350/1 *et seq.* (West 2017).

4

¶ 14     More specifically, the question in this appeal is whether Jaime Quintana was a "borrowed employee" of Ferrara Candy Company, and therefore barred by the exclusivity provision of the Workers Compensation Act from bringing a common law tort claim against it. 820 ILCS 305/1(a)(4) (West 2017). Under the borrowed employee doctrine, "an employee in the general employment of one person may be loaned to another for performance of special work and become the employee of the person to whom he is loaned." *A.J. Johnson Paving Co. v. Industrial Comm'n*, 82 Ill. 2d 341, 347 (1980). The doctrine is from the common law and has been incorporated into the Illinois Workers' Compensation Act. 820 ILCS 305/1(a)(4) (West 2017). If a borrowed-employee relationship is created, both the lending employer and the borrowing employer are immunized from any tort action for work-related injuries or death. *Saldana v. Wirtz Cartage Co.*, 74 Ill.2d 379, 388 (1978).

¶ 15     Whether a borrowed-employee relationship existed is generally a question of fact, but if the facts are undisputed and permit but a single inference, the question is one of law. *A.J. Johnson Paving Co.,* 82 Ill. 2d at 348-49. The two-prong inquiry required to determine whether a borrowed-employee relationship has been created asks: (1) whether the alleged borrowing employer had the right to direct and control the manner in which the employee performed the work; and (2) whether there was an express or implied contract of hire between the employee and the alleged borrowing employer. *Reichling v. Touchette Regional Hosp., Inc.*, 2015 IL App (5th) 14041, ¶ 28 (citing *A.J. Johnson Paving Co*., 82 Ill.2d at 348). Affirmative answers to both questions are necessary to establish the relationship. *Crespo v. Weber Stephen Products Co.*, 275 Ill.App.3d 638, 642 (1995).

¶ 16     It appears that the first prong is satisfied inasmuch as the facts show that both Ferrara and Elite Staffing controlled the work Quintana did and the manner in which he did it.  There is,

5

however, an active dispute about whether an implied or expressed employment contract has been created between Quintana and Ferrara.

¶ 17    Ferrara contends, and the trial court agreed, that the facts of this case show that an implied employment contract had been created. Such a contract exists where the worker "is aware that the borrowing employer 'is in charge' or generally controls the employee's performance." *Id.* at 641. The worker's acceptance of the borrowing employer's direction shows that he has acquiesced to the employment relationship. *A.J. Johnson Paving*, 82 Ill.2d at 350.

¶ 18    In *A.J. Johnson Paving*, our supreme court found an implied employer-employee relationship where the plaintiff "accepted [defendant's] control over the work in that he complied with the foreman's instructions with regard to starting, stopping and break times, as well as instructions as to where" and how to perform his tasks. *Id*. The First District found an implied employment contract where the plaintiff accepted the factory's "control and direction as to his work activities." *Evans v. Abbott Prod., Inc.*, 150 Ill. App. 3d 845, 849 (1ˢᵗ Dist. 1986). Finally, the Fifth District found an implied relationship where the plaintiff "followed" the defendant's orders, scheduling instructions, "and policies and protocol in performing her duties, and [had] been disciplined when she failed to do so." *Reichling*, 2015 IL App (5ᵗʰ) 14041, ¶ 38. Ferrara concludes that because Quintana was under Sammy Short's supervision and acquiesced to his direction, the cited cases require a finding that he was its employee under an implied employment contract.

¶ 19    Quintana argues that a contractual employment relationship did not exist because he signed a waiver, prepared by Ferrara, explicitly disclaiming any employer-employee relationship with the borrowing company. In relevant parts, the waiver states that the signatory was "solely an employee of staffing firm," which in Quintana's case was Elite Staffing and not Ferrara.

6

Quintana contends that, faced with this language, he reasonably believed that he was not—and could not be considered—an employee of Ferrara. In contrast, Ferrara argues that Quintana's belief is unreasonable under a plain reading of the signed waiver. It contends that the waiver is open to a single interpretation, which limits its applicability to Quintana's eligibility for an internal employment benefits plan.

¶ 20        We disagree with Ferrara and find that both interpretations are equally reasonable. Contrary to Ferrara's contention, the waiver language is not clearly limited to an internal benefit plan. Specifically, the benefit exclusion applies to "any benefit plan, policy or practice offered by Ferrara, *** to any of their direct employees, regardless of the length of my assignment to Ferrara by Staffing Firm and regardless of whether I am held to be a common-law employee of Ferrara for any purpose;" In addition to a "benefit plan," the waiver also refers to "policy or practice," which could suggest to Quintana that Ferrara may be declining to offer him workers compensation coverage as well.

¶ 21        Whether a borrowed employee relationship exists requires either an expressed or implied employment contract. *Reichling*, 2015 IL App (5th) 14041, ¶ 28 (citing *A.J. Johnson Paving Co.*, 82 Ill.2d at 348). Either contract, to be enforceable, must include a meeting of the minds or mutual assent as to its terms. *Academy Chicago Publishers v. Cheever*, 144 Ill. 2d 24, 30 (1991). The parties must "share a common understanding of the essential terms of [their] agreement" to establish mutual assent. *Id.* The dueling interpretations of the waiver place Quintana's understanding of his relationship with Ferrara at issue and raise a material factual dispute that forecloses Ferrara's motion to dismiss.

¶ 22        It is this finding that is challenged by the dissent, citing largely unassailable legal precedent. The issue before us is not, however, what the members of this panel with many years

7

of cumulative legal knowledge and experience would understand from the waiver. It is rather whether *this plaintiff* knew or should have known that, despite the seemingly definitive contrary language of the waiver he had been compelled to sign, he had nonetheless entered an employer-employee relationship with Ferrara. That is ordinarily a question of fact to be resolved by the jury or other factfinder. The majority finding is that the existence of that relationship is not so clear to an average worker reading that specific waiver language that the question should be taken from the finder of fact and resolved by the court as a matter of law.

¶ 23                                                      CONCLUSION

¶ 24        The judgment of the circuit court of Will County dismissing Jaime Quintana's complaint against Ferrara Candy Company is reversed.

¶ 25        Reversed.

¶ 26        JUSTICE HOLDRIDGE, dissenting.

¶ 27        The majority concludes that the benefit waiver is subject to two equally reasonable interpretations. The first interpretation being that the waiver limits Quintana's eligibility for internal employment benefits. The second interpretation being that the waiver declines Quintana workers' compensation coverage. I wholly disagree with this conclusion and would find that the first interpretation is the only reasonable one in this case.

¶ 28        A plain reading of the waiver, in its entirety, clearly reveals that the waiver is limiting Quintana's eligibility for internal benefit plans. *Supra* ¶ 6. The majority's suggestion that the waiver is open to a second interpretation, being that Ferrara is perhaps attempting to decline Quintana workers' compensation coverage, is contrary to law.

¶ 29        First, the majority suggests that workers' compensation coverage fits within the language of the waiver where it provides that the waiver applies to a " 'policy or practice *offered by*

8

*Ferrara*' " (Emphasis added.) *Supra* ¶ 20. Workers' compensation is not some type of elective program that an employer may voluntarily offer at its discretion—it is statutorily required by state law. Therefore, I fail to see how workers' compensation is encompassed within this language.

¶ 30    Second, eligibility for benefits under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2014)) is determined by law and any right to those benefits cannot be waived pre-accident. Such a practice would raise serious public policy concerns. However, those benefits can be waived post-accident by means of a settlement agreement and release, but only with approval from the Illinois Workers' Compensation Commission (Commission). See 820 ILCS 305/23 (West 2014); see *Maxit, Inc. v. Van Cleve*, 231 Ill. 2d 229, 236-39 (2008) (the workers' compensation claim could not be released absent approval from the Commission). Here, the waiver was signed pre-accident and would have no consequence under the Act.

¶ 31    Thus, the majority's second interpretation strains to find an ambiguity where none exists, is unreasonable, and leads to an absurd result. See *Bozek v. Erie Insurance Group*, 2015 IL App (2d) 150155, ¶ 19.    For the foregoing reasons, I would find that no material factual dispute existed and affirm the trial court's decision to grant Ferrara's motion to dismiss.