2023 IL App (1st) 221792

FOURTH DIVISION
Order filed: October 26, 2023

No. 1-22-1792

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| KEITH M. LEMAN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| JASON A. VOLMUT, individually, CPU RX, INC., an | ) | |
| Illinois Corporation, LISA R. NUCCI, individually, and | ) | No. 2019 L 3711 |
| INTREN, LLC, an Illinois Corporation, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Jason A. Volmut, Defendant-Appellant; CPU RX, Inc., | ) | Honorable |
| Defendant-Appellant; and Intren, LLC, Defendant- | ) | Gerald V. Cleary, |
| Appellee.) | ) | Judge, Presiding. |

JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Presiding Justice Rochford and Justice Martin concurred in the judgment and opinion.

**OPINION**

¶ 1     The plaintiff, Ketith M. Leman, and the defendants, Jason A. Volmut and CPU RX, Inc.
(CPU), appeal from an order of the circuit court granting summary judgment in favor of the
defendant, Intren, LLC (INTREN), based upon the exclusive remedy provision set forth in section

5(a) of the Workers' Compensation Act (Act) (820 ILCS 305/5(a) (West 2020)). For the reasons which follow, we affirm.

¶ 2      The plaintiff filed the instant negligence action against the defendants, Volmut, Lisa R. Nucci, and Volmut's alleged employers CPU and Forum Coworking, LLC, seeking damages for injuries he sustained on January 9, 2019, when he was struck by a vehicle driven by Nucci.[1] According to the complaint, the vehicle driven by Volmut failed to stop at a stop sign and struck the vehicle being driven by Nucci, causing Nucci's vehicle to strike the plaintiff, a pedestrian.

¶ 3      Nucci answered the complaint and filed a counterclaim against Volmut. Volmut answered the complaint and counterclaim and filed a third-party complaint for contribution against INTREN and Pinto Construction (PINTO). Nucci and CPU also filed third-party complaints for contribution against INTREN and PINTO.

¶ 4      On September 16, 2020, the plaintiff filed his First Amended Complaint against Volmut, CPU, Nucci, and INTREN, seeking damages for injuries he sustained on January 9, 2019. Relevant to the instant appeal is Count V of that complaint, a negligence action against INTREN, which was engaged in construction activities in the area where the plaintiff was struck by Nucci's vehicle. On December 7, 2020, INTREN filed a motion pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2018)) seeking dismissal of the plaintiff's claim against it. The motion was supported by the July 15, 2020, deposition of the plaintiff. INTREN alleged that it was the borrowing employer of the plaintiff and, therefore, immune from common law liability for his injuries under the provisions of section 5(a) of the Act. Finding that certain sections of a March 12, 2012, Master Subcontract Agreement (MSA) entered into between INTREN and PINTO created questions of fact as to the employment relationship between the

_____

[1] Forum Coworking, LLC, was voluntarily dismissed as a defendant.

plaintiff and INTREN, the circuit court denied INTREN's section 2-619 motion on February 17, 2021, without prejudice to its right to raise the section 5(a) bar as an affirmative defense.

¶ 5 Subsequently, INTREN filed a motion pursuant to section 2-1005 of the Code (735 ILCS 5/2-1005 (West 2020)) seeking summary judgment in its favor on Count V of the plaintiff's First Amended Complaint. In addition to the plaintiff's deposition, the motion was supported by the deposition testimony of its employees, Brian Miller, Tim Kuhn, and Martin Kominoski, and the deposition testimony of Terrence Senese, a PINTO employee. The motion again asserted that INTREN was, as a matter of law, the borrowing employer of the plaintiff and, therefore, immune from common law liability for his injuries under the provisions of section 5(a) of the Act. On July 18, 2022, the circuit court, again relying on the provisions of the MSA entered into between INTREN and PINTO, found that genuine issues of fact exist on the question of whether INTREN was the borrowing employer of the plaintiff and denied its motion for summary judgment.

¶ 6 On August 16, 2022, INTREN filed a motion to reconsider the July 18, 2022, denial of its motion for summary judgment. On October 5, 2022, the circuit court entered an order granting the motion to reconsider and entered summary judgment in favor of INTREN and against the plaintiff. The circuit court found that there was no question of fact on the question of INTREN's status as the borrowing employer of the plaintiff, and, therefore, the plaintiff's action against INTREN is barred by the exclusive remedy provision of section 5(a) of the Act.

¶ 7 On November 4, 2022, the plaintiff filed a motion to reconsider the circuit court's order of October 5, 2022, granting summary judgment in favor of INTREN. The circuit court denied the plaintiff's motion to reconsider and on November 10, 2022, entered an order pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), finding that there is no just reason to delay either enforcement of or appeal from its October 5, 2022, judgment.

¶ 8    The plaintiff filed his notice of appeal on November 30, 2022. On December 6, 2022, CPU filed its notice of appeal and joined in the appeal filed by the plaintiff pursuant to Illinois Supreme Court Rule 303(a)(3) (eff. July 1, 2017). On December 7, 2022, Volmut filed his notice of appeal and also joined in the appeal filed by the plaintiff.

¶ 9    Our jurisdiction in this matter attaches pursuant to Illinois Supreme Court Rule 304(a).

¶ 10    This case comes to us on review of an order granting summary judgment in favor of INTREN. Summary judgment should be granted only when the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005 (c) (West 2020). In conducting our review, we have examined the pleadings, depositions, and exhibits on file at the time of the entry of the order appealed from in their light most favorable to the plaintiff. See *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008); *Kolakowski v. Voris*, 83 Ill. 2d 388, 397 (1980). If the evidentiary material could lead to more than one reasonable conclusion or inference, we adopt the conclusion or inference most favorable to the opponent of the motion. *McIntosh v. Cueto*, 323 Ill. App. 3d 384, 389 (2001). Inferences and conclusions drawn from the evidentiary material must be reasonable. We are not required to adduce remote factual possibilities in favor of the opponent of the motion. *Elizondo v. Ramirez*, 324 Ill. App. 3d 67, 78 (2001). Our review of an order granting summary judgment is *de novo. Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004); *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 374, 382 (1993).

¶ 11    Only the plaintiff, CPU, and INTREN filed briefs in this appeal. In urging reversal of the circuit court's October 5, 2022, order granting summary judgment in favor of INTREN, the plaintiff argues that questions of fact exist on the question of whether INTREN was his borrowing employer which preclude the entry of summary judgment. Specifically, the plaintiff argues that questions of fact exist on the issues of whether he entered into an implied contract of employment

with INTREN and whether INTREN had direct control over his work. The plaintiff also argues that the terms of the MSA entered into between INTREN and PINTO create a genuine issue of fact as to INTREN's status as a borrowing employer. Finally, he argues that the circuit court erred in refusing to consider his responses to CPU's Request to Admit Facts. For its part, CPU makes many of the same arguments as the plaintiff. It argues that there are questions of fact on the question of INTREN's right to control the manner of the plaintiff's work. The bulk of CPU's arguments in this regard rest on the provisions of the MSA.

¶ 12    The issue in this appeal is whether, as a matter of law, INTREN was the borrowing employer of the plaintiff and, therefore, immune from common law liability to the plaintiff for the injuries he sustained on January 9, 2019.

¶ 13    Section 1(a)(4) of the Act (820 ILCS 305/1(a)(4) (West 2020)) provides, in relevant part, that "[w]here an employer operating under and subject to the provisions of this Act loans an employee to another such employer and such loaned employee sustains a compensable accidental injury in the employment of such borrowing employer *** as to such employee the liability of such loaning and borrowing employers is joint and several ***." An employee in the employment of one employer may be loaned to another employer for the performance of special work and become the employee of the borrowing employer while performing such special work. *A.J.Johnson Paving Co. v. Industrial Comm'n*, 82 Ill. 2d 341, 346–47 (1980). Whether a borrowing employer-employee relationship exists is generally a question of fact, but if the facts are undisputed and permit a single inference, the question is one of law. *Reichling v. Touchette Regional Hospital, Inc.*, 2015 IL App (5th) 140412, ¶ 25.

¶ 14    In *A.J.Johnson Paving Co.,* the supreme court set forth a two-part inquiry to determine whether a bowering employer-employee relationship exists; namely, (1) whether the alleged

borrowing employer had the right to direct and control the manner in which the employee performed his work, and (2) whether there was an express or implied contract of hire between the employee and the alleged borrowing employer. *A.J.Johnson Paving Co.,* 82 Ill. 2d at 348. The primary factor in determining whether a borrowing employer-employee relationship exists is the right to control the direction and manner of the employee's work. *Crespo v. Weber Stephen Products Co.*, 275 Ill. App. 3d 638, 641 (1995). The following factors support a finding that the borrowing employer had the right to control and direct the manner in which the employee performed his work: (1) the employee worked the same hours as the borrowing employer's employees; (2) the employee received instruction from the borrowing employer's foreman and was assisted by the borrowing employer's employees; (3) the loaning employer's supervisors were not present; (4) the borrowing employer was permitted to tell the employee when to start and stop working; and (5) the loaning employer relinquished control of its equipment to the borrowing employer. *A.J. Johnson Paving Co*., 82 Ill. 2d at 349.

¶ 15    As to the second factor, the employer-employee relationship may be based on an express or implied employment contract. *A.J. Johnson Paving Co.*, 82 Ill. 2d at 350. An individual may be the general employee of one employer and the loaned employee of another, but he must consent to the new relationship. *Prodanic v. Grossinger City Autocorp, Inc.*, *2012* IL App (1st) 110993, ¶ 17. Implied consent to employment exists where the employee knows that the borrowing employer generally controls or is in charge of his performance. *Crespo*, 275 Ill. App. 3d at 641. The employee's acceptance of the borrowing employer's direction demonstrates the employee's acquiescence to the employment relationship. *Id.*

¶ 16    Certain facts in this case are not disputed. The plaintiff is a carpenter and has been a member of Carpenters Union Local 58 since 1979. He had a years-long relationship with INTREN,

including working for INTREN in California for about nine months. About seven years before his January 9, 2019, injury, the plaintiff left California and returned to Illinois. Upon returning to Illinois, the plaintiff worked directly for INTREN for about three months. Because INTREN was not a signatory to his union's contract, the plaintiff could not work directly for INTREN. He testified that INTREN's CEO, Loretta Rosenmeyer, helped him secure employment with PINTO who was a signature to his union's contract. On March 12, 2012, INTREN and PINTO entered into the MSA which provided that PINTO would provide carpentry services to INTREN. PINTO agreed to provide all personnel, labor, tools, and equipment necessary to perform work for INTREN. It also provided that PINTO was solely responsible for determining and implementing the means, methods, and operative details of the work. The MSA contained an acknowledgement by PINTO that its employees and agents were not employees of INTREN but were independent contractors. The initial term of the MSA was three years which, thereafter, would renew on a year-to-year basis. The MSA was in effect at the time of the plaintiff's January 9, 2019, injury.

¶ 17    In the seven years prior to his injury, the plaintiff worked exclusively for INTREN, although he was paid by PINTO. He testified that INTREN assigned him work on a daily basis, supervised his work, and provided safety training. When he was not assigned to do carpentry work, the plaintiff helped INTREN's crews doing general labor work. The plaintiff stated that INTREN determined when he started and stopped working on any given day. He admitted that he regularly received assignments and took direction from INTREN's general foreman and foremen. The plaintiff testified that he worked the same hours as any INTREN employee. For a period of four or five years prior to his injury, the plaintiff received five hours of overtime pay each week which, according to the plaintiff, was "a deal made by me through INTREN."

¶ 18    The plaintiff testified that he did not know much about the nature of PINTO's business. According to him, he "got hired on just to work for INTREN." He stated that, during the seven years prior to his injury, he received no safety training from PINTO, he had only been to PINTO offices two or three times, he was the only PINTO employee working at INTREN, and there was no one at PINTO that he reported to. The plaintiff testified that PINTO supplied him with a truck, a circular saw, a reciprocating saw, and a hard hat. When the hard hat wore out, he received a replacement from INTREN.

¶ 19    On January 9, 2019, the plaintiff reported to INTREN's job trailer and was instructed to go to a site where INTREN was installing underground plastic pipes. When he arrived at the site, the plaintiff went to a trench that had been dug to repair a broken sewer pipe. He left the trench to go to his truck to get patching material. While walking to his truck, the plaintiff was struck by a vehicle and thrown 35 feet into the base of a tree.

¶ 20    Brian Miller, one of INTREN's general foreman, executed an affidavit and was deposed. He testified that the plaintiff was a PINTO employee working for INTREN. According to Miller, the plaintiff was originally brought to INTREN to be an INTREN employee, but because INTREN was not a signatory to plaintiff's union's contract, he could not work directly for INTREN. While working at INTREN construction sites, the plaintiff received directions from INTREN supervisors and employees. Miller testified that INTREN decided when and where the plaintiff would work on any given day and the hours that he started and stopped working. The plaintiff worked the same hours as the INTREN employees. Miller stated that INTREN employees regularly assisted the plaintiff with his work, and he used INTREN's equipment as needed. Miller testified that INTREN had the authority to fire the plaintiff and discharge him from any INTREN jobsite. According to Miller, INTREN's foremen directed the plaintiff's work, and the plaintiff never complained about

his work being directed by INTREN supervisors. Miller testified that the plaintiff did not request or receive any directions, instructions, or assistance from PINTO while working for INTREN. To the best of Miller's knowledge, PINTO supervisors were never present at any of INTREN's jobsites.

¶ 21    Timothy Kuhn testified that he was INTREN's project manager for the jobsite where the plaintiff was working when he was injured. He acknowledged that the plaintiff had worked for INTREN "for a long number of years." During that period, INTREN dictated the plaintiff's work schedule, including where and what hours he worked. When an INTREN crew to which the plaintiff was assigned missed a day of work due to weather conditions, the plaintiff also missed a day of work. Kuhn also stated that the plaintiff received safety training from INTREN. According to KUHN, no other PINTO employees were working at the jobsite where the plaintiff was injured. Martin Kominoski, one of INTREN's superintendents, testified that, on the day of his injury, the claimant was being directed by INTREN's onsite foreman.

¶ 22    Terrence Senese, Jr. testified that he was an estimator and project manager for PINTO on the date of the plaintiff's accident. He stated that it was INTREN that told the plaintiff where to work. INTREN did not provide him or anyone else at PINTO with any job briefs for the project on which the plaintiff was working when he was injured. Senese testified that, when the plaintiff first began working for PINTO, he may have gone to INTREN jobsites where the plaintiff was working, but he did not offer the plaintiff any assistance or evaluate his work. He did not direct the plaintiff and did not have any regular contact with him.

¶ 23    On the question of whether INTREN had the right to control and direct the manner in which the plaintiff performed his work, we agree with INTREN that there is no genuine dispute that INTREN possessed and exercised the right to control the plaintiff's work. Indeed, the

deposition testimony clearly established that: the plaintiff worked the same hours as INTREN employees; he received instruction and direction from INTREN foremen and was assisted in his work by INTREN employees; none of PINTO's supervisors were on the INTREN jobsite on the date of the plaintiff's injury; and it was INTREN that dictated the plaintiff's working hours. Although the plaintiff testified that PINTO furnished him with a truck, two saws and a hard hat, INTREN furnished him with a replacement hard hat and other equipment that he used in performing his work as needed. We believe that there are other factors in the relationship between the plaintiff and INTREN that establish INTREN's right to control and direct the manner in which the plaintiff performed his work. It was INTREN that provided the plaintiff with safety training, and when he was not doing carpentry work, he was assigned by INTREN to assist its crews doing general labor work. Particularly, on the date of his accident, the plaintiff was assigned by INTREN to assist in the repair of a broken sewer pipe.

¶ 24    As to the second factor in determining whether there was a borrowing employer-employee relationship between INTREN and the plaintiff, the existence of an express or implied contract of hire between them, we note the following. The plaintiff's testimony established that he worked exclusively for INTREN, he received and accepted direction from INTREN's supervisors, and it was INTREN that supervised his work. Miller testified that the plaintiff never complained about his work being directed by INTREN supervisors. We believe that the plaintiff's acceptance of direction from INTREN's supervisors demonstrates his acquiescence to an employment relationship. Most telling on this issue is the fact that the plaintiff received five hours of overtime pay each week as the result of, as the plaintiff put it, "a deal made by me through INTREN."

¶ 25    The plaintiff and CPU rely heavily on the terms of the MSA to create a question of fact on INTREN's status as a borrowing employer. The plaintiff notes that the MSA provides that

PINTO employees are not employees of INTREN, but rather are independent contractors. CPU notes the provision contained in Section X of the MSA, which provides that PINTO "understands and agrees that it, and not INTREM, is solely responsible for determining and implementing the means, methods, and operative details of the Work, using its experience, expertise and best judgment." We believe, however, that the label given by the parties to a relationship in a written agreement is not dispositive of the nature of that relationship. Rather, the facts must be considered to determine an individual's employment status. See *Roberson v. Industrial Comm'n*, 225 Ill. 2d 159, 183–84 (2007).

¶ 26    In this case, it is not disputed that the plaintiff had worked directly for INTREN in California. Upon returning to Illinois, the plaintiff worked directly for INTREN for a period of three months. However, because INTREN was not a signatory to the Carpenters Union contract, he could not continue doing so. In order to circumvent the union contract and enable the plaintiff to continue working for INTREN, INTREN's CEO found PINTO, a signature to the union contract. According to the plaintiff, he was paid by PINTO but did his work for INTREN. During the seven years prior to his January 19, 2019, injury, the plaintiff only went to PINTO twice, once to "sign up" and a second time to take a urine test. During that seven-year period, he worked exclusively for INTREN. It was INTREN, not PINTO, that assigned him work on a daily basis, dictated his working hours, supervised his work, and provided safety training. The plaintiff testified that he had no knowledge of the written contract between PINTO and INTREN and had no involvement in setting the terms of such a contract or its signing. As the plaintiff stated: "I can work for PINTO and INTREN gets me for a carpenter because I would be getting paid by PINTO." The undisputed facts of this case admit of only a single reasonable inference; the plaintiff had an employment relationship with INTREN without regard to the label that the MSA may have placed

on that relationship, and it was INTREN, not PINTO, that determined and implemented the means, methods, and operative details of the work being performed by the plaintiff.

¶ 27    Based upon the evidentiary material in the record before us as set forth above, we conclude that there is no genuine question of fact on both the issue of whether INTREN had the right to control and direct the manner in which the plaintiff performed his work and the issue of whether, at minimum, there was an implied contract of hire between the plaintiff and INTREN.

¶ 28    Finally, the plaintiff and CPU argue that the circuit court erred in failing to consider the answers to CPU's Request to Admit Facts signed by the plaintiff's attorney which they contend create a genuine issue of fact over INTREN's status as a borrowing employer. We disagree.

¶ 29    Requests to admit are a form of discovery. *Vision Point of Sale, Inc. v. Haas*, 226 Ill. 2d 334, 345–47 (2007). We review the circuit court's discovery rulings for an abuse of discretion. *In re County Treasurer*, 2012 IL App (1st) 112897, ¶ 21.  We find no abuse of discretion in the circuit court's refusal to consider the answers to CPU's Request to Admit Facts.

¶ 30    The answer to CPU's Request to Admit Facts served on the plaintiff was signed by the plaintiff's attorney, not the plaintiff. As this court found in *Brookbank v. Olson*, 389 Ill. App. 3d 683, 687 (2009), the plain language of Illinois Supreme Court Rule 216 (eff. July 1, 2014), provides that requests to admit facts are directed to a party, and the response must be made by the party to whom the request is directed. A response made by the party's attorney is insufficient. *Brookbank*, 389 Ill. App. 3d at 687–89. The plaintiff attempts to distinguish the holding in *Brookbank* based on the fact that the case dealt with a denial of a request to admit, whereas this case involves admissions. We find no merit in the argument that the factual distinction requires a different holding.

¶ 31    Rule 216(a) provides that requests to admit are directed to a party. Subsection (c) provides that the party may respond by serving a sworn statement of denial or sworn reasons why "he" can neither admit nor deny the requested facts. Ill. S. Ct. R. 216(c) (eff. July 1, 2014). The pronoun "he" refers to the party. It is the party that must admit or deny. See *Brookbank*, 389 Ill. App. 3d at 687.

¶ 32    Assuming for the sake of analysis only that answers to a request to admit facts signed by the plaintiff's attorney could be considered, the admissions set forth in the answer signed by the plaintiff's attorney could only be used against the plaintiff, not against INTREN or any other party to the suit. See *Rowe v. State Bank of Lombard*, 247 Ill. App. 3d 686, 696 (1993).

¶ 33    The plaintiff argues that, if his attorney's signature on the answer to CPU's Request to Admit Facts is insufficient to admit the facts requested, the facts are deemed admitted because no denial was served within 28 days (see Ill. S. Ct. R. 216(c) (eff. July 1, 2014)) and should, therefore, have been considered by the circuit court in determining whether a question of fact exists on INTREN's status as a borrowing employer. We disagree. The vast majority of the facts which are alleged to have been admitted directly contradict judicial admissions made by the plaintiff during his deposition. The plaintiff cannot create a genuine issue of fact and thereby defeat INTREN's motion for summary judgment by introducing counter-evidentiary material that contradicts his own judicial admissions. *Crittenden v. Cook County Comm'n on Human Rights*, 2012 IL App (1st) 112437, ¶ 45. If, as in this case, admissions made by party in a deposition are matters of fact within his personal knowledge, the admissions are judicial admissions. *Burns v. Michelotti,* 237 Ill. App. 3d 923, 932 (1992). A party cannot create a factual dispute by contradicting previously made judicial admissions. *North Shore Community Bank & Trust Co. v. Sheffield Wellington, LLC.*, 2014 IL App (1st) 123784, ¶ 103.

¶ 34    The foregoing analysis leads us to conclude that there is no genuine question of fact on the issue of INTREN's status as the borrowing employer of the plaintiff. As such, it is jointly and severally liable for any benefits due the plaintiff under the Act for the injuries he sustained while working on January 9, 2019. See 820 ILCS 305/1(a)(4) (West 2018).

¶ 35    Section 5(a) of the Act provides, in relevant part, that "no common law or statutory right to recover damages from the employer *** for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act ***." 820 ILCS 305/5(a) (West 2018). The exclusive remedy provision of section 5(a) acts as a bar to the plaintiff's action against INTREN, and, as a consequence, we affirm the summary judgment entered by the circuit court in favor of INTREN.

¶ 36    Affirmed.

_**Leman v. Volmut, et al. 2023 IL App (1st) 221792**_

| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2019 L 3711; the Hon. Gerald V. Cleary, Judge, presiding. |
|---|---|

| Attorneys for Appellant CPU RX, INC. | Stephen A. Rehfeldt Mulherin Rehfeldt & Varchetto, P.C. 4200 Commerce Ct., Suite 200 Lisle, IL 60532 Phone: 630.653.9300 |
|---|---|
| Attorneys for Appellant Keith M. Leman | Thomas L. Kilbride; Adam R. Vaught Kilbride & Vaught, LLC 82 S. LaGrange Rd., Suite 208 LaGrange, IL 60525 Phone: 217.720.1961 Richard L. Turner Turner Law Group 107 W. Exchange St. Sycamore, IL 60178 Phone: 815.895.2131 Thomas K. Prindable Cogan & Power, P.C. One E. Wacker Dr., Suite 510 Chicago, IL 60601 Phone: 312.477.2500 |
| Attorneys for Appellee Intren, LLC | Aleen R. Tiffany; Sarah B. Jansen; Jamie M. Rein HeplerBroom LLC 282 Memorial Court, Suite B Crystal Lake, IL 60014 Phone: 815.526.4814 |